**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0006n.06
Filed: January 7, 2008

**No. 05-6946**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| ADNAN SHALASH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

BEFORE: BATCHELDER, COLE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant-appellant Adnan Shalash was convicted of eleven counts of a twenty-one count multi-defendant indictment. Specifically, Shalash was convicted of two counts of conspiracy to possess and receive stolen property, in violation of 18 U.S.C. § 371 (Counts 1 and 6), four counts of receipt and possession of stolen goods and merchandise under 18 U.S.C. § 2315 (Counts 2, 7, 10, and 12), two counts of transportation of stolen goods and merchandise under 18 U.S.C. § 2314 (Counts 9 and 11), and three counts under 18 U.S.C. § 1956(a)(1)(A)(i) of intent to promote the carrying on of the specified unlawful activity (Counts 15, 16, and 19). Shalash argues that his conviction must be reversed because (1) the trial court admitted into evidence references to the criminal activity of Shalash's family and business associates; (2) a federal agent referenced his

experience in investigating terrorism cases during his direct testimony; (3) the trial court allowed the United States to introduce the business receipts of S&A Wholesale during direct testimony and then used that evidence for an improper purpose during closing argument; and (4) a federal agent testified that he had previous suspicions of Shalash being engaged in criminal activity. Shalash argues further that these errors, even if insufficient individually, are sufficient in the aggregate to warrant reversal of his conviction. Shalash additionally contends that the district court improperly calculated the amount due under the forfeiture allegation. We conclude that none of these arguments have merit and therefore affirm.

I.

Adnan Shalash immigrated to the United States from Palestine in the early 1990s. Some time after his arrival, Shalash began operating S&A Wholesale, a Lexington, Kentucky enterprise engaged in the business of purchasing goods and reselling them to companies at a profit.

In approximately 2000 or 2001, the Federal Bureau of Investigation ("FBI") began investigating members of Shalash's family in relation to the interstate transportation of stolen property. Through this investigation, the FBI suspected that Shalash and his nephew, Ibrahim Shalash, were also involved in the receipt of stolen property. Based on these suspicions, the FBI organized a sting in March of 2004. This operation involved an undercover FBI agent, Alex Peraza, posing as "Ruben," a Cuban cargo theft ringleader. Defendant and Ibrahim Shalash believed Peraza to be the brother-in-law of one of Ibrahim's employees at M&M Grocery. Peraza supposedly

employed truck drivers who would target tractor trailers for theft, and, during the investigation, he offered products to Adnan and Ibrahim that he represented as stolen.

Adnan Shalash's first contact with Peraza was on November 16, 2004, when Peraza and his associates used defendant's warehouse for "leakage" of baby formula from a tractor trailer. "Leakage" involves drilling a rivet into a trailer and removing the trailer's security bar, allowing the product inside to be removed without the breaking of any locks or seals. Weights, such as sandbags, are then added to conceal the weight of the removed product. Peraza, with his associates, and in front of defendant and Ibrahim, drilled into the trailer, disengaged the security arm, and removed 512 cases of baby formula. Peraza, after negotiating with defendant over the quantity of baby formula to be purchased, told defendant that they needed to replace the weight of the missing formula. Defendant suggested using tablets or tables. Peraza then discussed with defendant the possibility of obtaining an entire load of baby formula in the future. Peraza also informed defendant of the need to sell the merchandise quickly and to dispose of the trailer as soon as possible. Defendant paid Peraza $25,600 in cash for the 512 cases of formula.

The next direct contact between Peraza and defendant occurred on January 6, 2005. Ibrahim Shalash, who had been in contact with Peraza over the previous months, told Peraza that he wished to purchase 2,800 cases of baby formula. Ibrahim suggested that this formula, which Peraza represented as stolen, could be stored in defendant's warehouse. Peraza arrived at the warehouse before Ibrahim and conversed with defendant. Adnan Shalash had expressed concern to Ibrahim that the formula was connected to the FBI, and told Peraza that he wished to get rid of the load quickly

because he was uncomfortable storing it at the warehouse. Later that evening, defendant phoned Peraza and stated that in the future they should deal directly, rather than use Ibrahim as an intermediary.

Defendant again met with Peraza on February 10, 2005, at his warehouse, where they discussed the possibility of obtaining another shipment of baby formula. Peraza told defendant that this would be difficult, as they had stolen baby formula on two previous occasions. They also discussed switching trailers to avoid detection by law enforcement.

Peraza called defendant on February 17, 2005, to offer him a load of Listerine Cool Mint breath strips. This negotiation continued over the course of several phone calls, with the two finally agreeing on a price of $30,000. This shipment was delivered on March 1, 2005, and the negotiated amount was paid in cash. Peraza phoned defendant again on March 8, 2005, to discuss the status of a forty-pallet load of baby formula, agreeing on a price of $300,000. This formula shipment was delivered on March 17, 2005. A search warrant was executed upon delivery, and defendant and Ibrahim were arrested.

On April 7, 2005, a federal grand jury in the Eastern District of Kentucky returned an indictment charging Adnan Shalash with two counts of conspiracy to possess and receive stolen property that had traveled in interstate commerce, in violation of 18 U.S.C. § 371, five counts of receipt and possession of stolen goods and merchandise, in violation of 18 U.S.C. § 2315, two counts of transportation of stolen goods and merchandise under 18 U.S.C. § 2314, and a criminal forfeiture allegation made pursuant to 18 U.S.C. § 981(c) and 28 U.S.C. § 2461. A twenty-one count multi-

defendant superseding indictment was filed on June 2, 2005, charging defendant with two counts of conspiracy to possess and receive stolen property that had traveled in interstate commerce, in violation of 18 U.S.C. § 371 (Counts 1 and 6), five counts of receipt and possession of stolen goods and merchandise under 18 U.S.C. § 2315 (Counts 2, 7, 10, 12, and 13), two counts of transportation of stolen goods and merchandise, in violation of 18 U.S.C. § 2314 (Counts 9 and 11), five counts under 18 U.S.C. § 1956(a)(1)(A)(I) of intent to promote the carrying on of the specified unlawful activity (the 18 U.S.C. §§ 2314 and 2315 allegations) (Counts 15-19), and a criminal forfeiture allegation pursuant to 18 U.S.C. § 981(c) and 28 U.S.C. § 2461 (Count 20). The April 7, 2005, indictment was dismissed on December 22, 2005.

Adnan Shalash proceeded to trial on August 11, 2005. His defense at trial was that he was unaware that the merchandise he possessed was stolen and that he had no knowledge of the common methods employed in stealing the goods. The jury returned a verdict of guilty on Counts 1, 2, 6, 7, 9, 10, 11, 12, 15, 16, and 19, and a verdict of not guilty on Counts 13, 17, and 18. Shalash was sentenced to fifty-one months of imprisonment on each count to run concurrently, three years of supervised release, and a $100 special assessment per count.

The magistrate judge conducted an evidentiary hearing on February 23, 2006, to discern the proper amount owed under the forfeiture count of the indictment. The United States argued that Shalash should forfeit $184,352, the gross proceeds of the property involved in Counts 1, 9, and 10 of the indictment, while Shalash contended that he should only be required to forfeit the net proceeds

of the transactions involving the property in the above counts.  At the time of the hearing, Shalash

represented the net proceeds to be $24,340; he now contends his net gain to be $35,892.

II.

The district court's decision to admit or exclude evidence is reviewed under an abuse of

discretion standard.  *United States v. Wiedyk*, 71 F.3d 602, 609 (6th Cir. 1995).  Even if a district

court abused its discretion, a decision will be reversed only if the substantial rights of a party are

affected.  *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993).

Shalash's first argument concerns two separate allegations.  Shalash first argues that the

statement of FBI Agent Chris Jancosko, made during his direct testimony, wherein he stated "our

office began gathering intelligence on Adnan Shalash during a separate investigation of relatives of

Adnan" was improper.  Defendant objected to this statement at trial and was overruled.  He argues

that the Shalash family "is well known in the Lexington area for criminal activity," and thus

Jancosko's statement that Adnan's name arose during an investigation of the family was unduly

prejudicial.  He further opines that the statement suggests that he was investigated previously for

criminal activity, which is inaccurate.

Shalash additionally contends that the introduction of the indictment of Eyad Suleiman, a

business associate of his, into testimony was improper.  Shalash timely objected to the admittance

of the indictment, and the district court ruled that evidence of Suleiman's indictment, although

prejudicial, was nonetheless relevant.  Shalash believes that its introduction creates the improper

- 6 -

inference of guilt by association and maintains that it was improper for the prosecution to comment on an indictment as proof of guilt.

It is axiomatic that guilt by association is an insufficient basis on which to obtain or sustain a conviction. *United States v. Gibbs*, 182 F.3d 408, 423 (6th Cir. 1999). Here, however, Shalash's conviction does not rest on mere association with criminals, but on his actual criminal conduct. The United States anticipated that Shalash's defense at trial would be that he was unaware that the goods he purchased and sold were stolen. The issue of Shalash's knowledge therefore became relevant. The fact that defendant had worked with his relative Tareq Shalash, who subsequently was convicted of dealing in stolen property, and bought and sold from Suleiman, who was under indictment at the time of their dealings, is circumstantial evidence that Shalash possessed knowledge of the stolen nature of his merchandise.

This testimony is also relevant to Count 13 of the indictment. Ibrahim Shalash testified that he first became involved in the fencing of stolen property through defendant, beginning in 2001. He additionally testified that he and defendant dealt with others involved in the fencing of stolen goods. He stated that he and defendant discussed how to avoid making the same mistakes as their relatives Tareq and Ziad Shalash, such as avoiding theft of large trucks, because this would more likely result in their arrest. This testimony is plainly relevant to demonstrate that defendant engaged in criminal activity dating back to 2001. We therefore conclude that the district court did not err in admitting this evidence.

III.

Second, Shalash argues that the district court committed error requiring reversal by admitting Agent Jancosko's testimony that he primarily investigated terrorism cases. During direct examination, the United States inquired about Jancosko's background, including his education, military service, and his duties at the FBI. Regarding the last point, the government asked and Jancosko responded:

Q.  What kind of cases have you been assigned since you went to Lexington?

A.  A multitude of different types of cases, but most of what I have been working is terrorism cases.

Q.  Okay, and have you also worked some interstate transportation of stolen property cases?

A.  That's correct, sir.

Shalash asserts that the testimony regarding terrorism cases fundamentally affected the fairness of the trial, given his Middle-Eastern background and general public sensitivity regarding terrorism. He additionally states that eight weeks prior to his trial, CBS News reported that the FBI had traced money from baby formula traffickers to terrorist groups such as Hamas and Hezbollah, and that two months prior to the trial the local newspaper reported a comment from FBI Director Robert Mueller that sales of black market baby formula have been used to fund terrorist organizations.

Shalash did not object to this comment at trial. As such, we review the admission of the statement for plain error. *United States v. Bailey*, 488 F.3d 363, 367-68 (6th Cir. 2007). In order to find plain error, there must be (1) error in the lower court; (2) that error is plain; (3) the plain error

affected the defendant's substantial rights; and (4) the plain error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Fraser*, 448 F.3d 833, 841 (6th Cir. 2006) (citing *United States v. Thomas*, 11 F.3d 620, 629 (6th Cir. 1993)).

We find that Shalash suffered no unfair prejudice from Agent Jancosko's statement. The comment, both in its content and in its placement at the beginning of the testimony, was clearly elicited to establish Jancosko's background and qualifications. The United States's very next question was whether Jancosko possessed experience in dealing with interstate transportation of stolen property. This pointed follow-up question, by virtue of its specificity, clarified that only Jancosko's experience in dealing with the interstate sale of stolen property was immediately relevant. It also bears noting that the primary discussion of Shalash's ethnicity, and of terrorism generally, occurred during defense counsel's voir dire of the jury. Counsel inquired at length as to whether the jury believed they could be impartial to Shalash given his ethnicity, and told the jury "[t]here is no allegation in this case that he is a terrorist in any way. Terrorism is not an issue at all in this case." Given the incredibly brief reference to terrorism on direct examination and defense counsel's passionate explanation that terrorism was a non-issue, no reasonable jury could conclude that Shalash's trial involved terrorist activity. We therefore hold that the district court did not commit plain error in admitting the above statement.

## IV.

Third, Shalash argues that the district court abused its discretion in admitting into evidence the bank records of S&A Wholesale. These records indicated that several million dollars in business

had been conducted during the time of the alleged criminal activity. FBI Agent Joseph Moutz testified that S&A had written a total of $3,417,348.63 in checks made out to cash and had paid out a total of $8.6 million during this period. Shalash argues that this information was prejudicial and irrelevant because these records do not demonstrate that Shalash had knowledge of the stolen nature of the merchandise. Shalash objected to this testimony at trial, but did not object when the United States referred to Agent Moutz's testimony during closing arguments. He asks, however, that this court consider his original objection as a continuing objection, and thus review for an abuse of discretion, rather than plain error. Our conclusion is the same under either standard because we conclude that the district court neither committed error nor abused its discretion in admitting this testimony.

Throughout the trial, Shalash maintained that he dealt only in legitimate goods and that he was unaware that the merchandise that he purchased or sold was stolen. He testified that he obtained the merchandise personally or through other sellers and that he was able to generate a profit by purchasing the items through retailers' "two-for-one" sales. He added that he saved the receipts from these purchases. The United States introduced the bank records as evidence demonstrating that the revenue generated by S&A Wholesalers could not possibly have come from legitimate sources alone. Agent Moutz's testimony was therefore relevant and properly admitted into evidence.

V.

Fourth, Shalash contends the district court abused its discretion in admitting Agent Jancosko's testimony that the FBI had begun investigating Shalash while conducting a separate

criminal investigation of his relatives. Shalash agues that this testimony is highly prejudicial and ultimately irrelevant because he was never indicted for any earlier alleged criminal conduct. We disagree.

According to Agent Jancosko, investigation of Adnan Shalash began in 2001. Similarly, as stated above, Ibrahim Shalash testified that Adnan received stolen goods from family members beginning as early as 2001. Because Count 13 of the Indictment alleges that Adnan Shalash received and possessed stolen goods from 2001 onwards, testimony regarding investigation of this time period was directly relevant. Further, this evidence demonstrated that the United States had a logical reason to conduct a sting operation against Shalash, and thus the undercover operation did not constitute entrapment. Accordingly, we hold that the district court did not err in admitting this testimony.

VI.

Shalash additionally asserts that if this court finds that none of the above arguments warrant a new trial, then the cumulative effect of the alleged errors warrants reversal of his conviction. Individual errors may be deemed harmless when viewed in isolation, but may, in the aggregate, amount to an unfair trial and a denial of due process. *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993). We have cautioned that "'a cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.'" *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (quoting *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990)); *see also Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) (finding that cumulative effect of non-errors cannot amount to deprivation of due process in ineffective assistance

of counsel context) (citation and internal quotation omitted).  Because we have held that none of the arguments raised by Shalash constitute error, there is no cumulative error to be addressed.

## VII.

Finally, Shalash contends that the trial court improperly determined the amount he owed in restitution by calculating the amount based on the gross proceeds of his transactions, rather than on the net income he received as a result of the transactions.  We lack jurisdiction to consider this argument.

Shalash's arguments concerning the proper restitution determination actually concern the calculations of the magistrate judge, not the district court.  The magistrate judge entered its Report and Recommendation on June 19, 2006.  This recommendation was adopted by the district court on February 16, 2007, after Shalash filed the instant appeal.  We lack jurisdiction to consider the magistrate judge's Report and Recommendation on appeal because it is not a final order.  *Ambrose v. Welch*, 729 F.2d 1084, 1085 (6th Cir. 1984); *see also Williams v. Detroit Water & Sewerage Dep't*, No. 83-1746, 1985 WL 13014 at *1 (6th Cir. Mar. 18, 1985) (unpublished).  Moreover, Shalash has appealed the district court's preliminary order of forfeiture in a separate appeal, No. 07-5257.  Preliminary orders of forfeiture are final and appealable orders.  *United States v. Christunas*, 126 F.3d 765, 768 (6th Cir. 1997).

## VIII.

For the reasons stated above, we affirm the judgment of the district court.