**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

JEROME E. TODD, also known as
Rome also known as JT,
                    *Defendant-Appellant.*

No. 08-30360

D.C. No.
2:07-cr-00395-
JLR-1

AMENDED
OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted
August 5, 2009—Seattle, Washington

Filed October 20, 2009
Amended November 15, 2010

Before: Harry Pregerson, John T. Noonan and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Noonan;
Concurrence by Judge M. Smith

18505

## COUNSEL

Suzanne Lee Elliott, Esq., Seattle, Washington, for the defendant-appellant.

Ye-Ting Woo, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

## OPINION

NOONAN, Circuit Judge:

Jerome Eugene Todd appeals his conviction of three counts of sex trafficking in violation of 18 U.S.C. § 1591(a)(1) and one count of conspiracy to engage in sex trafficking in violation of 18 U.S.C. § 371. We affirm the convictions.

The statute, captioned the Trafficking Victim's Protection Act (TVPA), is a new effort to deal with a social ill whose international as well as interstate dimensions have invited federal attention and action. The TVPA was enacted in December 2000 and amended, as relevant here, in December 2003, July 2006 and December 2008. The statute focuses on those (usually men) who make money out of selling the sexual services of human beings (usually women) they control and treat as their profit-producing property.

Subtitled "Sex trafficking of children or by force, fraud, or coercion," the law strikes at two particularly vicious permutations of commercialized sex: at the exploitation of minors in the business of selling sex and at the use of criminal means to produce the product being sold. This case falls into the second slot.

### FACTS

We state the facts as to Todd's treatment of four women:

*Todd and Kelsey Kirschman*. Just eighteen in January 2005, Kelsey was still in high school in Bellingham. Todd, age 26, was not working but had cash. They dated, going to dinner

and to the movies. In May 2006, Todd suggested they get a place together. He also told her that they could get rich together if she worked as a prostitute. He would advertise her in the *Seattle Weekly*. She agreed. He ran the ad with a picture of her, offering "full service" for $200. Calls came in from men, and she responded to them. She gave up a job at Fred Meyer because Todd wanted her available for prostitution 24/7. Todd also arranged for her services to be posted on *Craigslist*. At Todd's direction, she also "walked the track," that is, she hung out in an area frequented by prostitutes and potential customers. Todd laid down rules for her to obey. As she testified, "You had to, basically, do everything he wanted." Most basically, "You had to give him all the money." Todd allotted Kelsey $35 each day to pay for condoms, food, and gas.

Todd maintained his rules psychologically by making Kelsey feel that she was "nothing." He maintained his rules physically by beating her "from head to toe," blacking one of her eyes and chipping one of her teeth. When she was 2½ months pregnant, he demanded that she abort the child, and she complied. She tried to hide some of her earnings as a prostitute from Todd, but he found them and confiscated them. She did not leave him because she thought that she "had nowhere else to go," was "scared," and had lived "under this man's rules" for a year and a half.

Reduced to this state of dependence, Kelsey performed a number of acts by agreement with Todd to further his traffic in the bodies of other women. She "groomed" Whitney T. — that is, coached her — as to how she should conduct herself as a prostitute working for Todd. She placed ads in *Craigslist* and *Seattle Weekly* advertising the sexual availability of Whitney and two other women who came to work for Todd as prostitutes. She rented hotel rooms for these women to use with customers, provided them with cellphones to receive calls from customers, and purchased condoms for them to

supply to customers. In these actions, she collaborated with Todd.

*Todd and Whitney T.* Whitney T., aged twenty, met Todd at a party in October 2006. Whitney was the unmarried mother of a young child. She was unemployed and living with a girlfriend in Everett. She and Todd liked each other and began a relationship. Todd had no job but he wore nice clothes and had cash. Whitney learned eventually that his income came from Kelsey's work as a prostitute.

In January 2007, Todd told Whitney that if she too worked as a prostitute for a couple of years she could have nice cars and a nice house. In February 2007, Whitney went on her first call. She moved into an apartment with Todd and Kelsey. Todd advertised her services on *Craigslist* and the *Seattle Weekly*. Todd imposed the rules that Whitney earn $500 in a day and that she turn the money over to him. She believed that Todd would beat her if she held any money back. She saw Todd beat Kelsey for violating one of his rules and was herself beaten by him for breaking his rule against speaking to black pimps.

Whitney T. twice left Todd and twice voluntarily returned to him. On July 3, 2007, she left him for good. She continued to work as a prostitute on her own.

*Todd and Whitney E.* Todd met Whitney E., aged eighteen, in June 2007. She had dropped out of high school, had left her father's home and her mother's home, was using drugs, was living with a boyfriend, and had been working for a week as a prostitute. The day after she met Todd, her boyfriend suggested that she work for Todd. The next day she began to work for him as a prostitute. He gave her a cellphone and clothes from Wal-mart. He advertised her on *Craigslist*. He told her that he expected her to service five customers per day and earn at least $900. He put her in an apartment with a prostitute who worked for his cousin, Trent. Trent told her he

would enforce Todd's rules physically. In July 2007, Todd himself assaulted her when she questioned one of his rules. She telephoned her mother for help and later the same day left the apartment with her mother and reported the assault to the police.

*Todd and Jemelle L.* Todd met Jemelle on her twentieth birthday in July 2007. She was living with her mother and working as a caregiver. They began to date. Todd had no job but had cash. In October 2007, she leased a house, and she and Todd moved in together.

Jemelle had previously engaged in four or five acts of prostitution. Todd now told her it would be an easy way to make money and have nice things. Todd gave her a phone to take calls from customers, and she began to respond to them after initially protesting. Todd advertised her availability in the *Seattle Weekly* and on the internet without her knowledge or consent. Todd told her that his rule was that she provide "full service," charge $200 per customer, report the transaction by telephone and turn all the money over to him. He provided her with marijuana.

Jemelle was scared seeing Todd beat Kelsey, and she was scared by his threat that she would regret it if she left him. Once she attempted to leave and he "pushed me down." The indictment covered the use of Jemelle from October 2007 to November 2007.

## PROCEDURE

On November 21, 2007, Todd was indicted. On February 8, 2008, a superseding indictment was returned. Trial began May 12, 2008. After seven days, the jury found Todd guilty on all counts. Both before and after the verdict Todd moved for a judgment of acquittal.

On September 29, 2008, Todd was sentenced to five years imprisonment for conspiracy to violate the TVPA; to 26 years

to run concurrently on each of the TVPA counts involving respectively Whitney T., Whitney E., and Jemelle; and to ten years on the count of transporting a prostitute in interstate commerce.

Todd does not appeal his conviction or sentence on the count of transportation of a prostitute. He appeals his conviction on all of the other counts.

## ANALYSIS

*The Statute*.

**Sex trafficking of children or by force, fraud, or coercion**

**(a)** Whoever knowingly—

**(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, or obtains by any means a person; or

**(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing that force, fraud, or coercion described in subsection (c)(2) will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

**(b)** The punishment for an offense under subsection (a) is—

**(1)** if the offense was effected by force, fraud, or coercion or if the person recruited, enticed, harbored, transported, provided, or obtained had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

**(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, or obtained had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In this section:

**(1)** The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

**(2)** The term "coercion" means—

**(A)** threats of serious harm to or physical restraint against any person;

**(B)** any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

**(C)** the abuse or threatened abuse of law or the legal process.

**(3)** The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity.

18 U.S.C. § 1591.

We consider the statutory elements in turn.

*Effect on interstate or foreign commerce*. The TVPA was enacted after Congress took a substantial amount of evidence on the traffic in the sexual services of women based on importing women from around the world by force or fraud. *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464, 1466 (2000). Congress concluded that prostitution in American cities encouraged and enlarged the market for this traffic from abroad. *Id.* Sex traffic is a global matter.

In addition to effect on foreign commerce, sex traffic in this case was conducted by advertising across state lines and so affected interstate commerce.

The TVPA is unlike the Violence Against Women Act of 1994, 42 U.S.C. § 13981, which sought to protect women by making gender-motivated crimes of violence actionable and was found to be beyond the power of Congress because its subject matter was not commerce. *United States v. Morrison*, 529 U.S. 598 (2000). The TVPA deals with commerce within the power of Congress to regulate. The defendant does not question the act's constitutionality.

*Todd's knowledge*. Here is a crux. Could Todd have known when he soft-soaped Whitney T., Whitney E., and Jamelle L. to go to work for him that later "force, fraud, or coercion would be used" to cause each of them to engage in commercial sex? How does anyone "know" the future?

**[1]** What the statute means to describe, and does describe awkwardly, is a state of mind in which the knower is familiar with a pattern of conduct. If "to know" is taken in the sense of being sure of an established fact, no one "knows" his own or anyone else's future. As William Shakespeare said of time in Sonnet 115, its "million'd accidents creep in" and nothing is completely stable, no plan is beyond alteration. When an

act of Congress requires knowledge of a future action, it does not require knowledge in the sense of certainty as to a future act. What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution.

**[2]** The government's evidence showed that Todd had such awareness when he persuaded Whitney T. to work for him. He had an established practice of living off the earnings of Kelsey, doing so by rules controlling her work and payment of the proceeds to him. The jury could conclude that Todd knew he would follow the same pattern with Whitney T. and then with Whitney E. and Jamelle L. Just as a mother who has had one child in school and prepared his lunch knows that she will prepare the school lunch for her second child, just as a judge knows that his law clerks will use Westlaw, so Jerome Todd knew that he would use coercion to cause his sex workers to make money for him.

*The findings of the jury.* The jury was instructed:

> The defendant is charged with count 2 of the first superseding indictment with sex trafficking, in violation of Title 18, United States Code, Sections 1591(a)(1) and 1591(b)(1). In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

> First, beginning in or about February 2007, and continuing through in or about July 2007, the defendant knowingly did recruit, entice, harbor, transport, provide, or obtain a person, that is, [Whitney T.];

> Second, the defendant did so knowing that force, fraud, or coercion would be used to cause [Whitney T]. to engage in a commercial sex act; and

Third, the defendant's actions were in or affecting interstate commerce.

**[3]** The jury answered these questions affirmatively as to Whitney T. and answered the same questions affirmatively as to Whitney E. and Jamelle L. The evidence of Todd's knowledge of his own modus operandi in securing an income from prostitution by a pattern of coercion was sufficient to support the jury's verdict.

**[4]** The knowledge required of the defendant is such that if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction. That required knowledge brings the predictable use of force, fraud, or coercion into the definition of the defendant's crime.

**[5]** *The sentence*. Section (b) is entitled "The punishment for an offense under subsection (a)". Section (b), therefore, does not create a new crime. It specifies the penalties for each of the crimes set out in (a). Two of these crimes depend on the age of the victim. The third crime is referenced summarily as an offense "effected by force, fraud or coercion." The summary reference does not enlarge the crime identified in (a). Section (b) is punishing the act identified in (a). A defendant who satisfies the elements of subsection (a) "*shall be* punished as provided in subsection (b)." 18 U.S.C. § 1591(a) (emphasis added). This reading comports with Congress's desire that the "sentencing provision of section 1591(b) . . . *correspond fully* with the language in the substantive offense provision in section 1591(a)." H.R. Rep. No. 108-264, pt. 1, at 20 (2003) (emphasis added).

**[6]** The evidence was enough to support Todd's conviction on the counts of sex trafficking.

*Other counts.*

**[7]** Todd was also convicted of conspiracy to engage in sex trafficking in violation of 18 U.S.C. § 371 and sentenced to five years imprisonment, and he was convicted of transporting a prostitute in interstate commerce in violation of 18 U.S.C. § 2421 and sentenced to ten years imprisonment. The sentences are concurrent. Todd appeals his conviction for conspiracy, but not his conviction for transporting a prostitute. Sufficient evidence was presented to show that he entered into agreement with Kelsey Kirschman to further a practice of sex trafficking, and the jury found the necessary facts. There was no error.

The judgment of conviction and the sentence are AFFIRMED.

---

M. SMITH, Circuit Judge, concurring:

I join in full the panel's amended opinion affirming Todd's convictions and sentence for sex trafficking in violation of 18 U.S.C. § 1591, and conspiracy to engage in sex trafficking in violation of 18 U.S.C. § 371. I write separately only to explain my decision to join in the amended opinion. We previously held, *sua sponte*, that Todd's sentence violated *United States v. Booker*, 543 U.S. 220, 236 (2005), because the jury was not asked whether "the offense was effected by force, fraud, or coercion." *See United States v. Todd*, 584 F.3d 788, 793-94 (9th Cir. 2009). Having reconsidered the issue in light of the government's petition for rehearing, I have changed my perspective.[1]

As I read 18 U.S.C. § 1591, there is no "hole in the statute." *Contra Todd*, 584 F.3d at 793. Rather, 18 U.S.C. § 1591(a)

---

[1]Although the government's petition gave me the opportunity to reconsider my reading of 18 U.S.C. § 1591, I read the statute differently than does the government.

covers only those instances of sex trafficking in which force, fraud, or coercion was actually used, or where the trafficking involved children under the age of 14 or between ages 14 and 18. Subsection (b)(1) simply establishes the punishment for those offenses. Where a defendant engages in sex trafficking without the use of force, fraud, or coercion, or where children are not involved, his conduct is criminalized by a different set of statutes. This reading is compelled both by a plain reading of the statute and by its legislative history.

Title 18, section 1591 is titled "Sex trafficking of children or by force, fraud, or coercion." "Although statutory titles are not part of the legislation, they may be instructive in putting the statute in context." *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007). By using this title, Congress intended to criminalize two forms of sex trafficking it considered "severe forms of trafficking in persons": sex trafficking where the victim is under 18 years of age, and sex trafficking in which the act is induced by force, fraud, or coercion. *See* Pub. L. No. 106-386, 114 Stat. 1464, 1466, 1470 (2000) (explaining that in passing the Trafficking Victims Protection Act of 2000, which enacted 18 U.S.C. § 1591, Congress was especially concerned with these two "severe forms of trafficking in persons").

Subsection (a) bears this out. A prosecution may be brought under subsection (a) where a person "recruits, entices, harbors, transports, provides, or obtains by any means a person," "knowing" either that: (1) "force, fraud, or coercion . . . *will be used* to cause the person to engage in a commercial sex act," or (2) the victim "has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a) (emphasis added).

The phrase "will be used" in subsection (a) does not leave open the possibility that force, fraud, or coercion was not eventually used in committing the offense. Rather, it simply allows for a conviction even where the defendant did not per-

sonally use force, fraud, or coercion. In other words, a defendant will only be charged with violating the statute if force, fraud, or coercion was actually used at some point in commission of the offense. By using the phrase "will be used" as opposed to something more speculative such as "could be used" or "might be used," the statute describes definitive conduct.

Had force, fraud, or coercion not actually been used to cause the victim to engage in a commercial sex act, Todd could not have been prosecuted under 18 U.S.C. § 1591. The appropriate statutes criminalizing sex trafficking not involving the use of force, fraud, or coercion are 18 U.S.C. §§ 2421 and 2422. Section 2421 proscribes "knowingly transport[ing] any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." Unlike the minimum 15-year term of imprisonment under section 1591, section 2421 carries a 10-year maximum. Section 2422 criminalizes "knowingly persuad[ing], induc-[ing], entic[ing], or coerc[ing] any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense."[2] It carries a 20-year maximum sentence.

The government's decision to prosecute the case is a backwards-looking exercise. The use of force, fraud, or coer-

---

[2]Though both sections 1591 and 2422 include a "coercion" element, one can imagine a situation in which the defendant does not himself coerce the victim to engage in a commercial sex act, yet coercion is eventually used by another member of the defendant's sex trafficking organization. Indeed, in enacting section 1591 Congress found that "[t]rafficking in persons is increasingly perpetrated by organized, sophisticated criminal enterprises." 114 Stat. at 1467. Such conduct would be prosecuted under section 1591 but not section 2422, since section 2422 requires the defendant to have personally coerced the victim.

cion to cause a victim to engage in a commercial sex act brings the case into the realm of section 1591, and the government must then ask whether the defendant "knew" that force, fraud, or coercion would be used. The only question, and that which Todd argued in his appeal, is whether the defendant knew at the time he committed the offense that force, fraud, or coercion would be used.[3] As the panel members now agree, Todd's knowledge that force, fraud, or coercion would actually be used "does not require knowledge in the sense of certainty as to a future act." Amended Maj. Op. at 18515. Based on an established pattern of conduct, Todd knew that force, fraud, or coercion would be used to cause his victims to engage in commercial sex acts.

Under this reading of section 1591(a), there is no gap in the statute. Section 1591(b) provides that "if the offense was effected by force, fraud, or coercion" the defendant is to be sentenced to a mandatory 15-year minimum prison term. So too if no force, fraud, or coercion was involved but the victim is under 14. If no force, fraud, or coercion was involved, but the victim is between 14 and 18, the defendant is to be sentenced to no less than 10 years imprisonment.[4] If a jury finds that the defendant knew "force, fraud, or coercion" would be used to cause a person to engage in a commercial sex act, it necessarily finds that "the offense was effected by means of force, fraud, or coercion." Indeed, a defendant who satisfies the elements of subsection (a) "*shall be* punished as provided in subsection (b)." 18 U.S.C. § 1591(a) (emphasis added).

---

[3]Of course, a defendant could also argue that force, fraud, or coercion was not actually used at any point. Had Todd made this argument, he could have asked for, and would have been entitled to, the appropriate jury instruction. *See Conde v. Henry*, 198 F.3d 734, 740 (9th Cir. 1999) ("It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case.").

[4]With respect to children, section 1591 covers a wider range of conduct than 18 U.S.C. § 2434, which makes it a crime to knowingly transport a minor with the intent that the minor engage in prostitution. Again, section 1591 targets larger sex trafficking organizations.

This reading comports with Congress's desire that the "sentencing provision of section 1591(b) . . . *correspond fully* with the language in the substantive offense provision in section 1591(a)." H.R. Rep. No. 108-264, pt. 1 (2003) (emphasis added).

The record in this case shows that Todd in fact used such "force, fraud, or coercion" to commit the offense. Whitney T. testified that once in May 2007, Todd demanded she perform oral sex on him. After she refused, Todd grabbed her by her throat, threw her backwards over the bed, and threatened to hit her with a bottle over her head while "screaming at the top of his lungs." On another occasion, Todd woke Whitney T. up in the middle of the night and began screaming at her for talking to another pimp. Todd punched her in the back, then grabbed her by the throat and threw her up against the wall while calling her an "out-of-pocket bitch." On a third occasion, Todd beat her because she met with a black male friend of hers. According to Todd, all black men are potential pimps and so Todd forbade Whitney T. from any contact with them. After Whitney T. violated this rule, Todd choked her and punched her in the chest until she was black and blue.

Because of this evidence, all of which the jury heard, the government prosecuted and the jury convicted Todd of violating section 1591(a). Indeed, the jury was asked whether Todd knew that "force, fraud, or coercion *would be* used to cause [Whitney T.] to engage in a commercial sex act." Amended Maj. Op. at 18515 (emphasis added). By finding that Todd knew that force, fraud, or coercion *would be* used, the jury necessarily found that force, fraud, or coercion was actually used.[5]

---

[5]The example Judge Noonan provides in the panel opinion illustrates the point. A judge knows that his law clerks "will use Westlaw" based on the judge having observed the work of previous law clerks over the years. At the end of one particular law clerk's term, the judge's judicial assistant might be asked whether the judge knew, at the time he hired the law clerk,

that the law clerk would use Westlaw during his clerkship. If the law clerk never used Westlaw during his clerkship, the judicial assistant would be forced to answer "no" because answering "yes" would be contrary to the facts. The judge could not know that the law clerk "would use" Westlaw if the law clerk never actually used Westlaw.