# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1006

_____

United States of America

*Plaintiff - Appellant*

v.

Daron Lee Jungers

*Defendant - Appellee*

_____

No. 12-1100

_____

United States of America

*Plaintiff - Appellant*

v.

Ronald Bonestroo

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

Submitted: October 18, 2012
Filed: January 7, 2013

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

RILEY, Chief Judge.

Separate juries convicted Daron Lee Jungers and Ronald Bonestroo (collectively, defendants) of attempted sex trafficking of a minor, in violation of the Trafficking Victim Protection Act of 2000 (TVPA).[1] The district court in each case granted each defendant's motion for judgment of acquittal under Fed. R. Crim. P. 29. The government appeals. Having jurisdiction under 18 U.S.C. § 3731, we reverse. See United States v. Boesen, 491 F.3d 852, 855 (8th Cir. 2007).

## I.    BACKGROUND

In February 2011, state and federal law enforcement officers working undercover in Sioux Falls, South Dakota, placed several online advertisements in an effort to apprehend individuals seeking to obtain children for sex. Officers pretended to be a man offering his girlfriend's underage daughters for sex while his girlfriend was out of town.

Jungers and Bonestroo each responded to the advertisements. After several e-mails discussing details about the girls, their ages, and the rates for sex, and after receiving an age-regressed photograph of adult female officers, Jungers indicated he wanted an eleven-year old girl for an hour so she could perform oral sex on him.

---

[1] 18 U.S.C. §§ 1591 and 1594(a). See Pub. L. No. 106–386, Div. A, 114 Stat. 1464 (2000).

Jungers then traveled from Sioux City, Iowa, to the house in Sioux Falls that law enforcement officers were using for the undercover operation. Jungers confirmed he would pay to receive oral sex from the eleven-year-old girl, but indicated he was uncomfortable doing so at the house and would prefer to take the girl with him instead. Police arrested Jungers when he entered the house.

Bonestroo also agreed to meet an undercover agent at the house after several e-mails and recorded telephone conversations about the girls and the rates for sex with them. After receiving an age-regressed photograph, Bonestroo agreed to pay $200 to have sex with the fourteen-year-old twin girls for an hour. When Bonestroo arrived at the house, he asked if the twins were there and showed the undercover officer the money he brought to complete the transaction. Officers arrested Bonestroo shortly thereafter.

Jungers and Bonestroo were each charged with attempted commercial sex trafficking, in violation of 18 U.S.C. §§ 1591 and 1594(a). At their respective trials, neither Jungers nor Bonestroo presented any evidence in defense. Rather than challenge the facts, both argued they were merely consumers or purchasers of commercial sex acts, not "sex traffickers" of children. The defendants each timely moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29(a) on that basis. The district court in each case took the motions under advisement. Jungers's and Bonestroo's respective juries found them guilty.

On December 5, 2011, the district court in Jungers's case acquitted Jungers and discharged him from confinement, finding the "evidence presented at trial [was] legally insufficient to support a conviction for sex trafficking under § 1591." The district court reasoned "the purpose of § 1591 is to punish sex traffickers and that Congress did not intend to expand the field of those prosecuted under that statute to those who purchase sex made available by traffickers."

On January 4, 2012, the district court in Bonestroo's case likewise acquitted Bonestroo of his conviction under §§ 1591 and 1594(a) because of insufficient evidence and discharged him from confinement. The district court concluded "[a]lthough a bare reading of at least one of these three verbs [recruits, entices, and obtains] may support a determination that § 1591 was meant to encompass purchasers of sex acts from minors, the entire language and design of the statute as a whole indicates that it is meant to punish those who are the providers or pimps of children, not the purchasers or the johns." The government appeals both orders, arguing "[t]here is no 'customer exception' to 18 U.S.C. § 1591."

## II.    DISCUSSION

### A.    Standard of Review

A district court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

> In reviewing a district court's grant of a motion for a judgment of acquittal, this court reviews the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. The standard of review is very strict, and we will reverse a conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt.

United States v. Ward, 686 F.3d 879, 882 (8th Cir. 2012) (quoting United States v. Johnson, 639 F.3d 433, 437-38 (8th Cir. 2011)) (quotation marks omitted). "When a sufficiency argument hinges on the interpretation of a statute, we review the district court's statutory interpretation de novo." United States v. Reed, 668 F.3d 978, 982 (8th Cir. 2012) (quoting United States v. Gentry, 555 F.3d 659, 664 (8th Cir. 2009)) (internal quotation marks omitted).

## B. Plain Meaning of 18 U.S.C. § 1591

Section 1591 prohibits knowingly recruiting, enticing, harboring, transporting, providing, obtaining or maintaining "a minor, knowing the minor would be caused to engage in commercial sex acts."[2] United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009). Section 1594(a) makes an attempted violation of § 1591 a federal crime.

Since Congress enacted § 1591 on October 28, 2000, as part of the TVPA, the lion's share of prosecutions under § 1591 have involved offenders who have played some part in supplying commercial sex acts. See, e.g., United States v. Chappell, 665 F.3d 1012, 1014 (8th Cir. 2012); United States v. Palmer, 643 F.3d 1060, 1063 (8th Cir. 2011). In United States v. Cooke, 675 F.3d 1153, 1155 (8th Cir. 2012), we affirmed the conviction of an attempted purchaser under § 1591, but did not consider the issue raised in this appeal. Accord United States v. Strevell, 185 F. App'x 841, 844-46 (11th Cir. 2006) (unpublished per curiam) (affirming conviction of attempted purchaser of sex from a minor in violation of §§ 1591 and 1594).

The district court and the parties in these consolidated appeals agree § 1591 is unambiguous. The sole issue raised on appeal is whether "[t]he plain and unambiguous provisions of 18 U.S.C. § 1591 apply to both suppliers and consumers of commercial sex acts." We conclude they do.

"Our starting point in interpreting a statute is always the language of the statute itself." United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997). "[I]f the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." United States v. Behrens, 644 F.3d 754, 755 (8th Cir. 2011) (quoting United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000)) (internal marks omitted).

---

[2]"The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

Where statutory language is plain, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." [Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004)]. Thus, if the relevant text is not reasonably susceptible to more than one interpretation[, i.e. ambiguous], we will not look beyond it unless application of the plain language "will produce a result demonstrably at odds with the intentions of its drafters." United States v. Ron Pair Enters., 489 U.S. 235, 242 (1989).

Contemp. Indus. Corp. v. Frost, 564 F.3d 981, 985 (8th Cir. 2009); see also United States v. Jongewaard, 567 F.3d 336, 339 (8th Cir. 2009) ("Our inquiry therefore begins and ends with the unambiguous text of the statute.").

"In interpreting the statute at issue, '[w]e consider not only the bare meaning' of the critical word or phrase 'but also its placement and purpose in the statutory scheme.'" Holloway v. United States, 526 U.S. 1, 6 (1999) (quoting Bailey v. United States, 516 U.S. 137, 145 (1995)). "[I]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993) (quoting United States v. Heirs of Boisdoré, 49 U.S. (8 How.) 113, 122 (1850)) (internal quotation marks omitted).

Under the heading "Sex trafficking of children or by force, fraud, or coercion," § 1591(a) provides

Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

Nothing in the text of § 1591 expressly limits its provisions to suppliers or suggests Congress intended categorically to exclude purchasers or consumers (johns) of commercial sex acts whose conduct otherwise violates § 1591. To the contrary, the expansive language of § 1591 "criminalizes a broad spectrum" of conduct relating to the sex trafficking of children. Jongewaard, 567 F.3d at 340 (rejecting the assertion that 18 U.S.C. § 875(c) only prohibited a subcategory of criminal conduct as contrary to the statutory text).

By its terms, § 1591(a)(1) applies to "[w]hoever knowingly . . . recruits, entices, harbors, transports, provides, obtains, or maintains [a child] by any means." "These words do not lend themselves to restrictive interpretation." United States v. Culbert, 435 U.S. 371, 373 (1978) (interpreting the Hobbs Act, 18 U.S.C. § 1951). The terms "whoever" and "any" are expansive. See, e.g., Freeman v. Quicken Loans, Inc., 566 U.S. ___, ___, 132 S. Ct. 2034, 2042 (2012) (explaining the term "any" "has an 'expansive meaning,'" that "can broaden to the maximum, but never change in the least, the clear meaning of the phrase selected by Congress") (quoting Dep't of Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 131 (2002)); United States v. Gonzales, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting Webster's Third New International Dictionary 97 (1976)); United States v. Lucien, 347 F.3d 45, 51 (2d Cir. 2003) (rejecting a defendant's proposed construction of a statute that limited

punishment for healthcare fraud to healthcare professionals because the statute applied to "whoever" committed such fraud and the common meaning of "whoever" was "whatever person, any person at all, no matter who") (quoting Webster's Third New International Dictionary 2611 (1981)) (internal quotation marks omitted); United States v. Khatib, 706 F.2d 213, 218 (7th Cir. 1983) (rejecting a defendant's proposed status limitation on the term "whoever" in 7 U.S.C. § 2024(b)(1) because the statutory language was not restrictive). Neither term implicitly limits the application of § 1591(a)(1) to suppliers nor exempts purchasers from prosecution under the statute.[3]

The detailed list of proscribed activities in § 1591(a)(1) likewise does not contain any restrictive or limiting language, beyond requiring the acts fall within Congress's power to regulate commerce. Section 1591(a)(1) makes no distinction between suppliers or purchasers of commercial sex acts with children—it prohibits acts of trafficking regardless of the identity or status of the trafficker.

Despite the absence of restrictive language, the defendants repeatedly assert § 1591(a)(1) is aimed exclusively at organized sex-trafficking rings or ventures that profit from the illicit sex trade. While § 1591 undoubtedly targets such organizations, the language in § 1591 indicates Congress also targeted individual acts of trafficking. To violate § 1591(a)(2), a trafficker must benefit "financially or by receiving anything of value from participation" in a trafficking "venture"—defined as "any group of two or more individuals associated in fact," § 1591(e)(5). Section 1591(a)(1) is not subject to those same limitations.

_____

[3] Jungers's brief acknowledges, "Neither Jungers nor the district court has ever contended that the term 'whoever' in [§ 1591(a)], standing on its own, would not include individuals such as Jungers."

The defendants maintain this appeal turns on the meaning of the term "obtains." Section 1591 does not define the term "obtains" or any of the other verbs listed. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." Smith v. United States, 508 U.S. 223, 228 (1993). The defendants acknowledge "obtains," by itself, is "an incredibly broad" verb, devoid of any inherent limitation on the actor or his object. See United States v. Ramos-Arenas, 596 F.3d 783, 787 (10th Cir. 2010) (defining obtains to include "attaining or acquiring a thing of value in any way," without limiting who ultimately receives it) (quoting Black's Law Dictionary 1078 (6th ed. 1990) ("To get hold of by effort; to get possession of; to procure; to acquire, in any way.")). Another dictionary defines obtain to mean "[t]o come into the possession of; to procure; to get, acquire, or secure." Oxford English Dictionary Online (September 2012) http://oed.com/view/Entry/130002 (November 2, 2012). The ordinary and natural meaning of "obtains" and the other terms Congress selected in drafting § 1591 are broad enough to encompass the actions of both suppliers and purchasers of commercial sex acts.

Though ultimately reaching a different conclusion, the district court in Bonestroo's case acknowledged "a bare reading of at least one of these three verbs [recruits, entices, and obtains] may support a determination that § 1591 was meant to encompass purchasers of sex acts from minors." It is far from absurd to conclude Congress intended § 1591(a) to apply to purchasers that violate its provisions. See Lamie, 540 U.S. at 534.

The defendants acknowledge the breadth of the statutory language and the absence of any explicit limitation to suppliers, but argue applying § 1591 to purchasers is inconsistent with the purpose, placement, structure, and context of the statute as a whole and renders parts of the TVPA superfluous or meaningless. Specifically, the defendants assert the language of § 1591, read in context, indicates Congress intended to prohibit the potential "chronological" steps a child sex-

trafficking organization must take to gain control over child victims and prepare them to engage in commercial sex acts in the future, but stopped short of criminalizing the conduct of the purchasers of such acts. According to the defendants, the definitions of "sex trafficking" and the phrase "will be caused" indicate § 1591 only applies to "predicate conduct" committed by suppliers of commercial sex acts.

Notwithstanding the defendants' argument to the contrary, the TVPA definition of "sex trafficking"—broadly defined as "the recruitment, harboring, transportation, provision, or obtaining of a person *for the purpose of a commercial sex act*"—readily includes the actions of a purchaser whose sole purpose is obtaining a child for sex. 22 U.S.C. § 7102(9) (emphasis added). "'Traffic,' like 'trade,' includes both 'the business of buying and selling for money' and 'the business of exchanging commodities by barter.'" United States v. Horn, 187 F.3d 781, 791 (8th Cir. 1999) (quoting May v. Sloan, 101 U.S. 231, 237 (1879), and citing Webster's Third New International Dictionary at 2422 (1986) ("traffic" is "the activity of exchanging commodities by bartering or buying and selling")).

The defendants' interpretation of "trafficking," as restricted to supply only, is too narrow. Bonestroo asserts "[t]he plain meaning of the word 'trafficking' in a commercial sequence does not include the end user." In support, Bonestroo claims "a drug user is not ever described as a 'trafficker.'" To the contrary, in clarifying what constitutes a predicate drug-trafficking offense under 18 U.S.C. § 924(c), Congress defined trafficking to include simple drug possession, which may encompass end users—the consumers. See 18 U.S.C. § 924(c)(2); see also United States v. Knox, 950 F.2d 516, 518 (8th Cir. 1991). The term "trafficking" does not inherently exempt purchasers.

While the defendants are correct that § 1591 does not criminalize engaging in a commercial sex act with a minor, it does not necessarily follow that the statute only applies to suppliers. The defendants fail to explain why a purchaser who entices,

-10-

transports, or obtains a child "for the purpose of a commercial sex act" cannot be guilty of both sex trafficking under § 1591 and subsequently engaging in the commercial sex act prohibited by another applicable statute. That the defendants can describe hypothetical circumstances under which a purchaser could engage in a commercial sex act without first enticing, transporting, or obtaining a child does not persuade us that § 1591 categorically excludes a purchaser whose conduct otherwise violates the statute by enticing, transporting or obtaining the minor.

The defendants' argument that the disjunctive string of verbs in § 1591(a)(1) limits the ordinarily broad term "obtains" so sharply that it reveals a latent exemption for purchasers and demonstrates § 1591 could not possibly apply to them is based on their mistaken belief that a purchaser cannot commit any of the other "predicate conduct" § 1591 prohibits. We agree with the government that "[t]he fact the district court read the seven verbs listed in § 1591 to describe predicate acts does not mean that a customer or purchaser cannot engage in at least some of the prohibited conduct."

Consider a purchaser who arranges with a fourteen-year-old prostitute's pimp to take the victim from Sioux Falls to Las Vegas for a few days for $1,000, during which time it is agreed the child will provide companionship and perform a sex act. The purchaser picks up the child, drives her to the airport, and flies her to Las Vegas. They take a taxi to a hotel where the purchaser rents a room and provides the victim with food, clothing, and drugs for several days. After the victim performs a sex act as agreed, the purchaser entices the child victim to engage in additional sex acts with the purchaser for the rest of the trip for an additional $100 each time. The purchaser and the victim have sex several times before returning to the airport and traveling back to Sioux Falls, where the purchaser returns the child to her pimp.

A reasonable jury could conclude the purchaser knowingly has enticed, harbored, transported, obtained, and maintained the child knowing she would be

caused to engage in commercial sex acts.[4]  The defendants' strained interpretation of § 1591 would leave the purchaser's "predicate conduct" unpunished under § 1591 because the purchaser potentially could be prosecuted for other crimes.  That Congress would intend such a result is far more absurd than punishing a purchaser who otherwise violates § 1591.

The infirmity of defendants' fixation on the distinction between suppliers and purchasers of commercial sex acts is laid bare by one simple change to the foregoing hypothetical.  Suppose rather than picking up the victim from the pimp, the purchaser, running late, called and asked that the girl be dropped off at his home.  The victim asks a friend, who is aware of all the details of the arrangement but otherwise uninvolved in trafficking, to drive the underage girl a few blocks to the purchaser's home.  The rest of the trip goes as previously described.  Under the defendants' proposed interpretation, the child's friend would violate § 1591—the purchaser would not.  Again, we doubt Congress intended such a result, and if Congress did, it should have done so expressly.

The defendants' reliance on the phrase "will be caused" as evidence that § 1591 cannot apply to purchasers is also misplaced.  Congress's use of the future tense says nothing about whether a purchaser can commit the acts prohibited by § 1591 before participating in a commercial sex act.  In many, if not all cases, the commercial sex

---

[4]In Bonestroo's case, the district court applied *noscitur a sociis* to determine that "obtains" applies exclusively to traffickers because the other operative verbs in § 1591 apply only to steps in the process of trafficking.  See United States v. Williams, 553 U.S. 285, 294 (2008) (holding the reach of a word that is subject to "wide-ranging meanings" is "narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated").  We disagree with the district court's analysis because, as we explain above, we conclude a purchaser may entice, harbor, transport, obtain, and maintain the minor child, as well as a supplier may.

act is still in the future at the time the purchaser entices, transports, obtains or otherwise traffics a child in violation of § 1591. In the hypothetical above, a reasonable jury could find the purchaser obtained, transported, harbored, maintained, and enticed the child before the child was "caused to engage" in various commercial sex acts. Perhaps more commonly, a purchaser could agree on the street corner to purchase a sex act with a child, but take the child to a motel or drive to a remote spot to engage in the act.[5] Again, the sex act is prospective when the purchaser obtains and transports the child. Given that the commercial sex act can be in the future regardless of whether a supplier or purchaser commits the conduct prohibited by § 1591, we fail to see how the phrase "will be caused" somehow manifests a congressional intent to limit § 1591 to suppliers.[6]

We also reject the defendants' arguments that Congress could not have intended that § 1591 apply to purchasers because (1) applying § 1591 to purchasers somehow renders other parts of the TVPA meaningless, and (2) other statutes already prohibit engaging in sex with minors. See, e.g., 18 U.S.C. § 2241(c) (aggravated sexual assault); 18 U.S.C. § 2422(b) (coercion and enticement); and 18 U.S.C.

_____

[5]As the government points out, Jungers expressed a desire to take what he expected to be an eleven-year-old girl somewhere else so she could perform oral sex on him.

[6]To be sure, Congress's use of the passive voice "can make the meaning of a statute somewhat difficult to ascertain." United States v. Wilson, 503 U.S. 329, 334-35 (1992). "The passive voice focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability." Dean v. United States, 556 U.S. 568, 572 (2009) (explaining "use of passive voice in statutory phrase 'to be used' in 18 U.S.C. § 924(d)(1) reflects 'agnosticism . . . about who does the using'" (quoting Watson v. United States, 552 U.S. 74, 80 (2007))). "It is whether something happened—not how or why it happened—that matters." Id. The passive phrase "will be caused," which reflects "agnosticism . . . about who" causes the child to engage in the commercial sex act, does not preclude applying § 1591 to a purchaser. Watson, 552 U.S. at 80.

§ 2423(b) (transportation of minors). To begin, we do not conclude § 1591 criminalizes the act of engaging in a commercial sex act with a minor. Rather, we conclude a purchaser may be convicted for committing an act prohibited by § 1591 without ever engaging in a sex act.[7]

As for any overlap within the TVPA or with other criminal statutes, "[r]edundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992) (quoting Wood v. United States, 41 U.S. (16 Pet.) 342, 363 (1842)). There is no repugnancy here. The defendants draw a credible distinction between obtaining a person, see 18 U.S.C. §§ 1590, 1591, and obtaining their labor or services, see 18 U.S.C. § 1589, but fail to establish our interpretation of § 1591 renders any part of the TVPA wholly redundant or meaningless.

The defendants' assertion that their potential culpability under other statutes indicates Congress intended categorically to exclude purchasers from § 1591 also falls short. In enacting § 1591, Congress found

> Existing legislation and law enforcement in the United States and other countries are inadequate to deter trafficking and bring traffickers to justice, failing to reflect the gravity of the offenses involved. No comprehensive law exists in the United States that penalizes the range of offenses involved in the trafficking scheme. Instead, even the most brutal instances of trafficking in the sex industry are often punished under laws that also apply to lesser offenses, so that traffickers typically escape deserved punishment.

---

[7]Indeed, the Ninth Circuit has held that a jury can find a violation of § 1591(a) even if the minor never engages in a commercial sex act. See United States v. Brooks, 610 F.3d 1186, 1197 n.4 (9th Cir. 2010); United States v. Todd, 627 F.3d 329, 333-34 (9th Cir. 2010).

22 U.S.C. § 7101(b)(14). Applying § 1591 to purchasers of commercial sex acts who violate the statute despite their exposure to punishment for related crimes is entirely consistent with Congress's concerted efforts "to combat trafficking in persons" and "ensure just and effective punishment of traffickers." Id. at 7101(a).

Limiting the application of § 1591 to suppliers may make some sense analytically, but "Congress did not write the statute that way." United States v. Naftalin, 441 U.S. 768, 773 (1979). "It may well be that Congress, when it drafted the language of [§ 1591], had in mind [suppliers operating large trafficking rings], but the language [of § 1591] is not so limited." Smith, 508 U.S. at 239 (quoting United States v. Harris, 959 F.2d 246, 262 (D.C. Cir. 1992), abrogated in part by, United States v. Stewart, 246 F.3d 728, 731 (D.C. Cir. 2001)) (internal marks omitted) (interpreting 18 U.S.C. § 924(c)). Section 1591 makes no exception for purchasers or customers, and those terms, as well as supply and supplier, "appear nowhere in the statute." Smith, 508 U.S. at 229.

"[W]e ordinarily resist reading words or elements into a statute that do not appear on its face." Dean, 556 U.S. at 572 (quoting Bates v. United States, 522 U.S. 23, 29 (1997)) (internal quotation marks omitted). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Germain, 503 U.S. at 253-54.

Had Congress intended to exclude purchasers from § 1591(a)(1)'s blanket prohibition of sex-trafficking acts or limit its application to suppliers, it could have done so expressly. See, e.g., 18 U.S.C. § 1587 (limiting application of a statute prohibiting the possession of slaves aboard a vessel to "the captain, master, or commander of any vessel"); 18 U.S.C. § 1588 (limiting application of a statute prohibiting the transport of slaves to the "master or owner or person having charge of any vessel"); 18 U.S.C. § 1592(b) (excepting victims of severe forms of trafficking

from a statute prohibiting certain conduct with respect to passports and immigration documents "in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor"). "We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." Jama v. ICE, 543 U.S. 335, 341 (2005).

In short, "Congress knows how to craft an exception [or impose a status requirement] when it intends one." See Jonah R. v. Carmona, 446 F.3d 1000, 1007 (9th Cir. 2006). It has not done so in § 1591.

The unambiguous text of § 1591 makes no distinction between suppliers and purchasers of commercial sex acts with children, and the defendants have failed to persuade us Congress intended a supplier-only limitation or a purchaser exception in § 1591 that Congress never stated. We hold § 1591 applies to a purchaser of commercial sex acts who violates the statute's terms.[8]

The question remains whether the defendants' conduct violates §§ 1591 and 1594(a). Having thoroughly reviewed the record in each case, we conclude Jungers's and Bonsestroo's respective juries reasonably found each of them guilty beyond a reasonable doubt of attempting to engage in child sex trafficking, in violation of §§ 1591 and 1594(a).

The uncontested evidence adduced at Jungers's trial, viewed "in the light most favorable to the government" along with all "reasonable inferences that support the verdict," Ward, 686 F.3d at 882 (quoting Johnson, 639 F.3d at 437-38) (internal

---

[8]"Because the statutory language is clear," we need not reach the defendants' arguments based on "legislative history, or the rule of lenity." Boyle v. United States, 556 U.S. 938, 950 (2009).

quotation marks omitted), showed Jungers attempted to obtain an eleven-year-old girl for an hour so she could perform oral sex on him. When he arrived at the designated house, Jungers told the undercover officer he wanted to take the girl somewhere else for sex because he was uncomfortable with having sex at the house. Jungers's attempt to gain exclusive possession, custody, and control of the underage girl knowing she would be caused to engage in a commercial sex act amply supports Jungers's conviction for attempted sex trafficking.

Bonestroo presents a closer case. Bonestroo concedes the term "obtain" is "incredibly broad" and can mean acquiring, controlling, or possessing something "for a short period of time," but asserts there is no evidence he attempted to obtain or possess a minor because he was only attempting to pay for sex. We disagree.

Bonestroo arranged with undercover officers to acquire custody and control of what he believed to be fourteen-year-old twin girls without anyone else present for an hour. In negotiating the transaction, Bonestroo asked "How much for the twins." Bonestroo then agreed to pay $200 to get the girls alone with him in a room so he could do anything he wanted to them short of visible physical abuse. The jury reasonably found Bonestroo attempted to obtain the girls as that term is used in §§ 1591 and 1594(a).

## III.   CONCLUSION

We reverse the judgment of acquittal entered by the district court for each defendant, and we remand the cases with instructions for the district court in each case to reinstate the jury verdict and proceed with sentencing.

_____

-17-