NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0122n.06

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Mar 02, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE MIDDLE** |
| ABDULLAHI SADE AFYARE, *et al.*, | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
| *Defendants-Appellees*. | ) | |
| | ) | |

Before: BATCHELDER and WHITE, Circuit Judges; and COX, District Judge.[*]

**ALICE M. BATCHELDER, Circuit Judge.** This is one of two companion opinions from this panel in separate appeals from a much larger criminal prosecution. In this appeal, the government challenges three in limine rulings, arguing that the district court misinterpreted 18 U.S.C. § 1591(a) and Federal Rule of Evidence 701(c) to improperly exclude certain evidence. Specifically, the government challenges the court's rulings on whether § 1591 applies only to sex trafficking of children; the meaning of "venture" as used in § 1591(a)(2); and whether teachers and police officers are experts when testifying about their perception of a person's age.

We have already criticized the prosecution of this case thus far, *see United States v. Fahra*, No. 13-5122, and need not repeat those concerns. But we note that the prosecution's actions in the first trial certainly affected the district court's rulings, which underlie the succeeding decisions the government challenges here. Consequently, while this is an appeal of

---

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

certain in limine decisions, in anticipation of the *next* trial, we cannot escape the genesis of those decisions, and the surrounding circumstances, which stem from the *past* trial.

For the reasons that follow, we REVERSE in part and AFFIRM in part the district court's interpretation of 18 U.S.C. § 1591(a) and Federal Rule of Evidence 701(c), and its resulting determinations regarding the admissibility of evidence and jury instruction.

## I. Background

The federal prosecutor obtained a grand jury indictment charging each of 30 defendants with one or more of 20 different federal offenses, primarily relating to the alleged operation of a large-scale sex trafficking ring, spanning nine cities in four states over ten years, from January 2000 until July 2010. After months of pre-trial litigation (almost 2,000 docket entries), including myriad motions and rulings and severance of many defendants, the parties selected a jury in March 2012 for the trial of the first nine defendants on four charges:

Count 1: Conspiracy to commit sex trafficking of victims under the age of 18 (or under the age of 14), in violation of 18 U.S.C. § 1591(a)(1).

Count 2: Conspiracy to benefit financially from a venture to sex traffic victims under the age of 18 (or 14), in violation of 18 U.S.C. § 1591(a)(2).

Count 12: Sex trafficking of Jane Doe 2, a minor under the age of 14, in violation of 18 U.S.C. § 1591(a).

Count 13: Attempting to sex traffic Jane Doe 2, a minor under the age of 14, in violation of 18 U.S.C. § 1594(a).

Each defendant had individual counsel defending against the individualized charges within the overall sex trafficking conspiracy charge. Thus the defense was as complex as the prosecution, and the court anticipated a lengthy and costly trial. The prosecution had named over 200 intended witnesses and proposed that trial would last over three months.

Instead, the trial lasted three weeks. Despite the extensive pre-trial motions, arguments, and rulings, several legal and evidentiary disputes arose during trial that required the court to rule immediately. One such dispute resulted in the court's determination that the federal sex-

2

trafficking statute, 18 U.S.C. § 1591(a), applies only to sex trafficking of *children* (i.e., persons under the age of 18), which led the court to instruct the jury accordingly. Another dispute resulted in the court's determination that the word "venture," as used in 18 U.S.C. § 1591(a)(2), means "sex trafficking venture," which led the court to exclude evidence of ventures that were not involved with sex trafficking, and also to instruct the jury accordingly. In the final dispute at issue here, the court determined that, under Federal Rule of Evidence 701(c), teachers and law enforcement officers were "experts" when testifying to their perception of a person's age, which led the court to exclude certain witnesses the prosecution had proffered for testimony on that subject matter, because the prosecution had not properly declared them as experts prior to trial.

The jury acquitted six of the nine defendants of all charges but convicted the other three of some charges. Subsequently, the court granted full acquittals to those three defendants as well because it found that the prosecution had charged a single conspiracy but had presented evidence of multiple conspiracies, thereby causing prejudice to the defendants. The government appealed and we affirmed in the companion opinion to this one. *See United States v. Fahra*, No. 13-5122.

Meanwhile, the prosecution was preparing to try the next set of defendants, on the same general theory and similar charges, under an amended indictment, and found itself bound by certain rulings the district court had made during the first trial. The prosecution therefore filed "motions in limine" to challenge the application of those rulings to the *next* trial or trials in this case. As we have already stated, the three rulings at issue here concern (1) whether 18 U.S.C. § 1591 applies only to sex trafficking of persons under the age of 18; (2) the meaning of "venture" as used in 18 U.S.C. § 1591(a)(2); and (3) whether teachers and law enforcement officers are experts when testifying to their perception of a person's age. The district court denied the motions, based on the same reasoning in its prior, in-trial rulings. The government appeals.

## II. Analysis

Because this appeal challenges the district court's "exclusion of government evidence prior to trial," we have jurisdiction over this appeal pursuant to 18 U.S.C. § 3731. A procedural oddity here warrants mention, however, in that the government is actually challenging the district court's rulings from the first trial, which would ordinarily not be appealable given that the result was the acquittal of all defendants. But at least 20 more defendants await trial in this case and, with multiple severances having already been granted, there could be as many as eight more trials. In anticipation of the next trial(s), the government moved the district court for "pre-trial" rulings on several legal and evidentiary questions, labeling the motion as "in limine." The court recognized that this was not a typical "motion in limine," but was actually a motion to reconsider those prior decisions, and it found no basis to reconsider. But, recognizing the government's argument that the prior rulings' law-of-the-case effect would exclude government evidence on these issues, the district court ruled on the motion so that the government could appeal the decisions before proceeding with the next trial(s). *See United States v. Presser*, 844 F.2d 1275, 1279 (6th Cir. 1988). Consequently, we have jurisdiction to decide this appeal.

### A.

The first question is whether the district court erred by holding that 18 U.S.C. § 1591(a)(1) applies only to sex trafficking of children and, correspondingly, does not apply to sex trafficking of adults (i.e., persons 18 years of age or older). We find that it did so err.

The district court asserted five bases for its decision that § 1591 applies only to children: (1) the provision's title, (2) the lack of any "18 years or older" language in § 1591(a), (3) the language of the punishment provision in § 1591(b), (4) several cases and a law review article, and (5) its view that applying § 1591(a) to both adults and children created a contradiction.

4

Because this is a challenge to the district court's interpretation of a statute, we review de novo. *United States v. Allen*, 614 F.3d 253, 255 (6th Cir. 2010). While we may consider the district court's reasoning for its persuasiveness, we must interpret the statute for ourselves.

Section 1591 is titled "Sex Trafficking of Children *or* by Force, Fraud, or Coercion" (we pause to emphasize the "or"), and section (a) reads in pertinent part:

> (a) Whoever knowingly--
>
> (1) . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act, *or* that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a) (emphasis added).[1]

Turning first to the district court's fourth basis, we find that the six cases and the law review article the district court relied upon are inapposite. The question here is whether § 1591 applies only to children but none of those cases analyzes that issue directly, or even tangentially.[2] Simply put, the cases do not support a conclusion that § 1591 necessarily applies *only* to

---

[1] We are using the version of 18 U.S.C. § 1591 that was effective at the time of the trial, the motion before the district court, and argument here on appeal. The district court conducted the trial in April 2012, the court decided the motion in June 2013, and the parties filed their appellate briefs in May-June 2014. We heard oral argument on March 11, 2015. The amended version the statute took effect two months later, on May 29, 2015. Importantly, the amended language does not change the substance of the statute as pertinent here. Therefore, we have used the prior version of the statute, the one in effect for all of the foregoing argument and decision-making, in order to maintain consistency with the parties' prior arguments, the district court's analysis, and the arguments on appeal.

[2] The district court relied on these six cases, none of which addresses the issue of whether § 1591 applies only to trafficking of children or applies to both children and adults: *United States v. Daniels*, 653 F.3d 399 (6th Cir. 2011) (holding, among other things, that a jury could have believed Daniels knew certain victims were children); *United States v. Jungers*, 702 F.3d 1066 (8th Cir. 2013) (holding that § 1591 applies to "johns"); *United States v. Chappell*, 665 F.3d 1012 (8th Cir. 2012) (concerning a jury instruction about the § 1591 scienter requirement); *United States v. Bonestroo*, 2012 WL 13704 (D.S.D., Jan. 4, 2012) (overruled by *Jungers*, above) (holding that § 1591 does not apply to "johns"); *United States v. Jungers*, 834 F. Supp. 2d 930 (D.S.D., 2011) (overruled by

children.  The law review article is unrelated and, at one point, cuts the opposite way, saying, "evidence of force, fraud, or coercion is still required for the prosecution of adult domestic traffickers."  *Adult Domestic Trafficking and the William Wilberforce Trafficking Victims Protection Reauthorization Act*, 19 Cornell J.L. & Pub. Pol'y 495, 526 (Spring 2010).  The district court's reliance on these authorities was misplaced.

We turn next to the district court's first two assertions supporting its view that § 1591(a) applies only to sex trafficking of children, namely that the provision's title said so and that the text lacked any "18 years or older" language.  But the title actually offers two alternatives, and the absence of "18 years or older" language in the text does not limit the provision to only those under 18, as the district court says.  Rather, the "plain language" of § 1591(a) also criminalizes the sex trafficking of adults if it is by force, fraud, or coercion.  We have even said so previously, though in an unpublished opinion without analysis.  *See United States v. Tutstone*, 525 F. App'x 298, 302 (6th Cir. 2013) ("The TVPA criminalizes sex trafficking of children as well as sex trafficking of adults that is accomplished through force, fraud, or coercion.").  *See also United States v. Mack*, 808 F.3d 1074, 1081-83 (6th Cir. 2015); *United States v. Jackson*, 622 F. App'x 526, 527-28 (6th Cir. 2015).

The government cites five out-of-circuit opinions to support this interpretation of § 1591 as applying to adults.  Four of these cases merely assume or accept that view without any explanation or analysis.[3]  But the fifth case, *United States v. Todd*, 627 F.3d 329 (9th Cir. 2009),

---

*Jungers*, above) (holding that § 1591 does not apply to "johns"); *United States v. Wilson*, 2010 WL 2991561 (S.D. Fla., July 27, 2010) (upholding a vagueness challenge to the statute).

[3] *See United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) ("Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims."); *United States v. Evans*, 476 F.3d 1176, 1179 n.1 (11th Cir. 2007) ("Section 1591['s] . . . reach is limited to sex trafficking that involves children or is accomplished by force, fraud, or coercion."); *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1002-03 (S.D. Ind. 2007) ("Plaintiffs' second argument is based on a comparison of the language of section 1589 and section 1591, which addresses sex trafficking of children by any means and of adults by means of force, fraud or coercion."); *United States v. Powell*, No. 04-cr-885, 2006 WL

concerned a defendant's challenge to his conviction under § 1591 for sex trafficking of adult victims by force, fraud, or coercion. The defendant, Todd, did not argue that § 1591 applies only to children, not adults, and the panel majority offered only a conclusory statement, *see id.* at 331 ("Subtitled 'Sex trafficking of children or by force, fraud, or coercion,' the law strikes at two particularly vicious permutations of commercialized sex: at the exploitation of minors in the business of selling sex and at the use of criminal means to produce the product being sold. This case falls into the second slot."). The concurring opinion, however, offered a bit more reasoning:

> As I read 18 U.S.C. § 1591, there is no 'hole in the statute.' *Contra Todd*, 584 F.3d at 793.[4] Rather, 18 U.S.C. § 1591(a) covers only those instances of sex trafficking in which force, fraud, or coercion was actually used, or where the trafficking involved children under the age of 14 or between ages 14 and 18. Subsection (b)(1) simply establishes the punishment for those offenses. Where a defendant engages in sex trafficking without the use of force, fraud, or coercion, or where children are not involved, his conduct is criminalized by a different set of statutes. This reading is compelled both by a plain reading of the statute and by its legislative history.
>
> Title 18, section 1591 is titled 'Sex trafficking of children or by force, fraud, or coercion.' 'Although statutory titles are not part of the legislation, they may be instructive in putting the statute in context.' *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007). By using this title, Congress intended to criminalize two forms of sex trafficking it considered 'severe forms of trafficking in persons': sex trafficking where the victim is under 18 years of age, and sex trafficking in which the act is induced by force, fraud, or coercion. *See* Pub. L. No. 106-386, 114 Stat. 1464, 1466, 1470 (2000) (explaining that in passing the Trafficking Victims Protection Act of 2000, which enacted 18 U.S.C. § 1591, Congress was especially concerned with these two 'severe forms of trafficking in persons').

*Id*. at 335-36 (Smith, J., concurring). This concurring opinion also found that its view is consistent with § 1591(b), which is the punishment or mandatory-sentencing part of the statute:

> Under this reading of section 1591(a), there is no gap in the statute. Section 1591(b) provides that 'if the offense was effected by force, fraud, or coercion' the defendant is to be sentenced to a mandatory 15-year minimum prison term. So

---

1155947, *1 (N.D. Ill. Apr. 28, 2006) ("A defendant violates 18 U.S.C. § 1591 by causing a person to engage in a sex act for money when either (1) the person was under 18, or (2) the defendant used 'force, fraud or coercion.'").

[4] This citation is to the prior version of this opinion, which the panel majority vacated, amended, and reissued without any reference to this "hole in the statute," which is essentially the defendants'/appellees' argument here.

too if no force, fraud, or coercion was involved but the victim is under 14. If no force, fraud, or coercion was involved, but the victim is between 14 and 18, the defendant is to be sentenced to no less than 10 years imprisonment.

*Id.* at 337 (Smith, J., concurring) (footnote omitted). The punishment provision says:

The punishment for an offense under subsection (a) is
   (1) if the offense was effected by means of force, threats of force, fraud, or coercion . . . , or by any combination of such means,

   or

   if the person recruited, enticed, harbored, transported, provided, [or] obtained . . . had not attained the age of 14 years at the time of such offense,

[then the punishment is] by a fine under this title and imprisonment for any term of years not less than 15 or for life;

   or

   (2) if the offense was not so effected [by force, threat, fraud, or coercion], and the person recruited, enticed, harbored, transported, provided, [or] obtained . . . had attained the age of 14 years but had not attained the age of 18 years at the time of such offense,

[then the punishment is] by a fine under this title and imprisonment for not less than 10 years or for life.

18 U.S.C. § 1591(b) (paragraph breaks and indenting added for clarity and effect).[5]

Here, because the district court read this provision as punishing only for circumstances in which the victim was a child (i.e., less than 18 years old) and as expressly excluding any punishment for adult victims, the court concluded that the statute does not criminalize sex trafficking of adult victims. But that is not a plain, obvious, or reasonable reading. Rather, § 1591(b) covers three possibilities:

   Section (b)(1): (with force/fraud/coercion) + (victim *any* age) = 15 year minimum;
   Section (b)(1): (no force/fraud/coercion) + (victim age less than 14) = 15 year minimum;
   Section (b)(2): (no force/fraud/coercion) + (victim age 14 to 18) = 10 year minimum.

To be sure, § 1591(b) imposes no punishment for the fourth possibility: (no force/fraud/coercion) + (victim 18 or older). But it is reasonable, and consistent with §1591(a), to read this as merely

---

[5] *See* footnote 1, *supra*.

omitting that scenario (i.e., ordinary adult prostitution) from this federal sex-trafficking statute.[6]

And omitting that one particular scenario does not mean, as the district court and defendants would have it, that this provision necessarily omits *all* adult victims.

Finally, the district court theorized that, because the statute specifies trafficking by means of force/fraud/coercion "or" of individuals under age 18, if the force/fraud/coercion applies to adults then it could not also apply to children (under age 18), which "would eliminate prosecutions for children who were trafficked by means of force." R. 3167 at p. 26; pg # 22166. Again, that is not a plain, obvious, or reasonable reading of the statute. While this use of "or" certainly distinguishes two possibilities, it does not indicate a necessarily disjunctive alternative between mutually exclusive things. *Cf. OfficeMax, Inc. v. United States*, 428 F.3d 583, 588-590 (6th Cir. 2005). It is possible, indeed foreseeable, that a victim would both be a child and be subjected to force/fraud/coercion and that Congress wrote the provision to criminalize either possibility individually or both together.

On appeal, the defendants have not relied on all of the district court's reasons or any of its cited cases. The defendants argue only that § 1591(a) cannot apply to adults because § 1591(b) "provides no punishment for sex trafficking of adults." Appellee Br. at 27. But, as explained in the foregoing, § 1591(b) does provide punishment for sex trafficking of adults if the sex trafficking was accomplished by force, fraud, or coercion.[7]

We hold that § 1591(a) criminalizes the sex trafficking of children (less than 18 years old) with or without any force, fraud, or coercion, and it also criminalizes the sex trafficking of adults (18 or older), but only if done by force, fraud, or coercion.

---

[6] *See Todd*, 627 F.3d at 335 ("Where a defendant engages in sex trafficking without the use of force, fraud, or coercion, or where children are not involved, his conduct is criminalized by a different set of statutes.").

[7] The defendants/appellees also argue, in the alternative, that if the statute is ambiguous, the rule of lenity must prevail. But this statute is not ambiguous.

**B.**

The second question is whether the district court erred by holding that a "venture" in 18 U.S.C. § 1591(a)(2) means only a "sex trafficking venture" and not just any type of venture. We agree with the district court but provide some further clarification.

A "venture," according to Black's Law Dictionary, is "[a]n undertaking that involves risk; esp., a speculative commercial enterprise." And according to the Random House Webster's Unabridged Dictionary, a "venture" is "an undertaking involving uncertainty as to the outcome, esp. a risky or dangerous one"; or "a business enterprise or speculation in which something is risked in the hope of profit; a commercial or other speculation"; or "the money, ship, cargo, merchandise, or the like, on which risk is taken in a business enterprise or speculation." Clearly, each of these definitions requires an undertaking of some kind directed to some defined end.

But the government's theory is that one element of sex trafficking is that the defendant participated in a "venture"; a "venture" is *any* two or more people associating *for any reason*, even legal or innocuous reasons and, importantly, even reasons wholly unrelated to sex trafficking; and, therefore, evidence that each defendant had associated with another defendant was necessary and relevant, even without proof or inference of any purpose at all, let alone proof of any intent to engage in sex trafficking. To that end, during the first trial, the prosecution sought to call several witnesses who would identify some group of defendants and testify to his or her having seen them together, though for some admittedly non-sex-trafficking purpose. Most of these witnesses were police officers recounting prior encounters, though one was a lay witness who had merely seen the defendants associating at a restaurant on prior occasions.

For example, the first such witness was Detective Nick Mesler, who testified about a traffic stop (for an obstructed license plate): one defendant was driving a car registered to another defendant. R. 2631 p. 1796-98; Pg# 15969-71. Similarly, Police Sergeant Brian Sand

testified about a traffic stop—for which he gave no reason—and identified three defendants who were in the car together at that time. R. 2634 p. 2027-09; Pg# 16210-12. That was the totality of the testimony; there was no discussion of criminal activity or anything else.

When the court excused Officer Sand and the prosecution called the next police officer to testify, the defense objected that the testimony was irrelevant and violated Federal Rule of Evidence 404(b) (crimes, wrongs, or other acts). Specifically, the defense said:

> Your Honor, my concern is, that witness that you just saw is going to be indicative of about 15 witnesses that the [prosecution] plans to call. And supposedly these witnesses are relevant to this case to show that there is a venture. My understanding of the venture portion of this statute is that it's a venture for the purpose of sex trafficking children. There is going to be no evidence introduced by any of these witnesses that any of these stops were involved with the sex trafficking of children. They are just going to say that on such and such date I stopped these people, and these people were together.
>
> Therefore, Your Honor, that has no relevance to any of the charges in this case. And it has the potential of getting out a bad impression to this jury about these defendants because of all these officers come in and saying, yeah, I had contact with them on such and such day. I will submit to the [c]ourt that I don't think the government can get up here and say any of these incidents that they are about to introduce have anything to do with sex trafficking.

R. 2634 at 2030-31; Pg# 16213-14. After some clarification, during which the prosecution provided the court with its "404(b) summary chart," identifying these proposed witnesses, and assured the court that the witnesses would not discuss other "acts," the prosecution explained:

> In these instances that defense counsel are talking about that [we] will put on, it's to show venture proof that these individual[s] are associated together. It's not to get into the underlying facts of what the stop was, but that they are together. As an example, . . . [the defense] has already asked multiple questions about whether it's the correct Fabulous, whether it's the person that hangs around with them, to other witnesses. Their being associated together is what the definition of a venture is. And so proof that shows them being associated together is relevant. It's not, again, to get into the underlying facts about why they were arrested, but rather that they were together at the time. Not even to get into whether they were arrested, but that the officer had contact with them, and they were together.

R. 2634 at 2033-34; Pg# 16216-17. After the court agreed with the prosecution's definition of venture and the relevance of the witnesses, the defense reiterated its concern:

11

Your Honor, I would say that that definition needs to be read in conjunction with the purpose of the statute, which is it's a venture for the purpose of sex trafficking. This is just different events where these people were pulled over for different -- and Your Honor, this is the big concern. If we had 15 witnesses come up here who are dressed [as] police officers and say, on such and such occasion, I pulled over so-and-so, and these people were together. And they leave it at that? That leaves an inference to this jury that they were being pulled over for something related to sex trafficking, when it didn't. It had nothing to do with sex trafficking.

R. 2634 at 2034-35; Pg# 16217-18. This did not persuade the court, which continued to agree with the prosecution and permitted the prosecution to proceed with its next witness, Officer Charles White, who identified three defendants with whom he had "come into contact" while on duty on a certain date, but gave no further testimony. R. 2634 at 2037-39; Pg# 16220-22.

When the court ended the day, it turned its attention back to the 404(b) summary chart and asked if those witnesses would be testifying the next day. The prosecution explained that, because they were flying in from Minnesota, they would likely be the day after. But the next morning, the prosecution informed the court, "We have some of the officers for the venture proof . . . [,] the two minute officers, just did you have contact? Who did you have contact with on such-and-such date." R. 2636 at 2061; Pg# 16247. Meanwhile, the defense had filed a motion overnight, opposing the prosecution's interpretation of "venture," which prompted this exchange:

The Court: Does the [prosecution] have any authority . . . for its theory on venture -- that proof that they were together on different dates on other matters proves a venture under the sex trafficking statute? Any authority on that?

Prosecutor: No.

The Court: Any analogous authority on that?

Prosecutor: When looking for -- in relation to that particular statute as to proving how you establish the venture, I couldn't -- I didn't find any cases associated with that.

The Court: I want you to look at *United States v. Moss*, 379 Fed. App. 651 (9th Cir. 2010), that discusses the sufficiency of the evidence . . . for a sex trafficking venture.

Prosecutor: Okay.

12

R. 2636 at 2062; Pg# 16248. The court and parties then turned to other matters and trial proceeded with evidence about the telephone calls the defendants had made from jail.

During the jury's lunch recess, the court returned to the venture question and, relying on three cases,[8] expressed its new opinion that the venture must be viewed in the context of the underlying offense, so "evidence of these defendants being stopped by police officers on non-sex trafficking matters . . . could not be relied upon to prove a criminal venture under Section 1591." R. 2636 at 2180; Pg# 16366. The prosecution argued, among other things, that the court was conflating two different issues, which culminated with the following exchange:

> The Court: No, there is one issue. You want to take venture, and isolate it, and say if two persons associated, that's a venture. And then you want to extrapolate that over to the sexual trafficking statute.
>
> Prosecutor: That's right.
>
> . . . .
>
> The Court: But you can't do that as a matter of statutory construction. You have to look at all parts of a statute as a whole. You can't isolate any particular provision and then use it as a vehicle to ensnare conduct that the statute never contemplated.
>
> Prosecutor: Right. But Your Honor, the definition itself for a venture does not restrict - - 1591(d) - -
>
> The Court: It doesn't restrict, but it's got to be tied in some manner to sexual trafficking. That's what all these propositions say about making a criminal venture succeed, that [the defendant] did some act to make this venture successful. And you have to consider venture in that context. Does the association tend to make the underlying conduct successful? If that's true, then you have a venture.
>
> . . . .
>
> Prosecutor: But does that also mean that proof with respect to membership in [the] Somali Outlaws [gang] has to be restricted to members who are involved [in sex trafficking, or] that the Somali Outlaws have got to exist for the sole purpose of sexual trafficking?
>
> The Court:  . . . [Y]es, a mere membership in the gang I don't think would be sufficient to show . . . [a defendant's] being a participant in the

---

[8] The court cited three cases: *United States v. Coppin*, 1 F. App'x 283, 294 (6th Cir. 2001); *United States v. Aarons*, 718 F.2d 188, 191 (6th Cir. 1983); and *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978).

venture, because to show a venture, you have to prove that there was some active part. The mere negative acquiescence isn't enough.

Prosecutor: For example, if a defendant were to throw a gang symbol, that evidence could only come in if they are throwing a gang symbol because it's related to sex trafficking?

The Court: No. You are missing the point. If you want to prove that the gang engaged in sex trafficking, that's fine. And you can prove the membership. But beyond proof of membership, you have to prove that whoever that member was[, that he] committed some affirmative act to further the success of sexual trafficking.

. . . .

Prosecutor: Your Honor, there are two questions. The first is, are these people associated. Yes. Does their associatedness go to an act, in Paragraph 1. That second question is a separate analysis.

The Court: I understand [your argument]. I mean, we're going in circles. That has been your position since you started.

R. 2636 at 2185-89; Pg# 16371-75. The court and parties then returned to other matters and trial proceeded with additional evidence about telephone calls the defendants had made from jail.

The court began the next morning by acknowledging that it had reviewed the prosecution's written brief, but nonetheless ruled to exclude the witnesses, explaining:

> The witnesses first of all, are listed as 404(b) witnesses, which relates to other crimes and, therefore, I do not think that the original intent was to include these witnesses to prove venture.
>
> The Court remains convinced that under the *Longoria* case that was cited by the Sixth Circuit, approvingly in the [*Aarons*] decision, that to be evidence of a venture for sex trafficking, the act of the defendant must be with another to further the sex trafficking. Otherwise, you are going to have testimony of 41 witnesses testifying to matters totally unrelated to the case.
>
> So the Court is going to . . . exclude the 404(b) witnesses.

R. 2640 at 2268; Pg# 16460.

Later that afternoon, the prosecution called a Somali named Ibrahim Warsame to testify and he identified eight defendants he had seen together on occasions at "like maybe a coffee shop or maybe a restaurant." Except for saying that he could not identify the other 22 indicted

14

defendants, that was the full scope of his testimony. R. 2640 at 2354-64; Pg# 16546-56. During later argument on a motion for acquittal, the defense referred back to his testimony:

> The extent of Mr. Warsame's testimony is that [a defendant] was seen in the restaurant, and he's a singer. And that's it. I'm not even sure why they called him, other than because of this government theory that, if you know each other, if you are seen together in the same restaurant, then you are associated in fact, you are part of a venture, and therefore, you are part of this broad conspiracy to sex traffic. And the Court has had serious reservations about that theory, as do I.

R. 2645 at 2588; Pg# 16789. But this was not presented as a separate challenge to either the legitimacy of Warsame's testimony or the prosecution's broad venture theory.

In ruling on the government's motion in limine, the district court relied on the foregoing reasoning, which it had applied during trial, to reach the same conclusion: "mere membership in the gang or association of two or more [d]efendants [i]s insufficient to prove a venture under Section 1591(a)(2) and to be [a] participant in the venture, the [prosecution] ha[s] to prove that the [d]efendant committed an 'overt act' to advance the sex trafficking activities charged." R. 3167 at 23; Pg# 22163. On appeal, the government reasserts its same arguments.

Because this is a challenge to the district court's interpretation of a statute, we review de novo. *Allen*, 614 F.3d at 255. Therefore, we begin with the plain language of the statute.

Whereas subsection (1) criminalized the individual act of sex trafficking, subsection (2) criminalizes a sex-trafficking "venture" by providing in pertinent part:

> Whoever knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act [of recruiting, enticing, harboring, transporting, providing, obtaining . . . [or] maintaining . . . by any means a person] . . . [while] knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a)(2).[9]

---

[9] The unedited version of the provision says:

To guide our analysis, we begin with the district court's interpretation of this provision.

Although not stated so expressly, the district court essentially set out three elements:

> The defendant must
>
> (1) knowingly benefit (financially or by receiving anything of value);
>
> (2) from participation in a venture which has engaged in trafficking of a person (i.e., an act of recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining by any means a person);
>
> (3) while knowing or in reckless disregard of the fact that participants in the venture would use force, threats, fraud, coercion, or any combination to cause that person to engage in a commercial sex act, or
>
> while knowing or in reckless disregard of the fact that the person has not attained the age of 18 years and would be caused to engage in a commercial sex act.

Specifically, in framing the second element, the district court relied on the general concept of a "venture" in a conspiracy, holding that the venture must promote the offense underlying the conspiracy (here, sex trafficking) and that mere association in a gang or some other endeavor (criminal or otherwise) is not enough. The district court relied on cases that support such an interpretation. *See United States v. Aarons*, 718 F.2d 188, 191 (6th Cir. 1983) (explaining that in a case about a false statement to the government "there must be evidence that the defendant committed an overt act designed to aid in the success of the venture" (editorial and quotation marks omitted)); *United States v. Coppin*, 1 F. App'x 283, 288 (6th Cir. 2001) (explaining that "mere association with conspirators is not enough to establish participation in a conspiracy" in a drug case (quotation marks omitted)) (relying on *United States v. Gibbs*, 182 F.3d 408, 422 (6th Cir. 1999)); *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978) (cited with

---

Whoever knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a)(2); *but see* footnote 1, *supra*.

approval by Sixth Circuit cases) ("Proof that a defendant was merely associated with a criminal

. . . is not, without more, sufficient to sustain a conviction for aiding and abetting a criminal

venture. To be upheld, the conviction must be based on evidence that the defendant was

associated with *the* criminal venture, participated in *it* as something he wished to bring about,

and sought by his actions to make *it* succeed." (emphasis added to "the" criminal venture)).[10]

The government urges a different interpretation and would instead re-state the provision

as having four separate and indispensable elements:

> (1) The defendant must knowingly participate in a venture (*any venture*);

> (2) the defendant must benefit (financially or by receiving anything of value) from participation in that venture;

> (3) some participant in that venture must otherwise engage in trafficking of a person (i.e., an act of recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining by any means a person); and

> (4) the defendant must know or recklessly disregard the fact that others in the venture would use force, threats, fraud, coercion, or any combination to cause that person to engage in a commercial sex act, or

> know or recklessly disregard the fact that the person has not attained the age of 18 years and would be caused to engage in a commercial sex act.

In support of this interpretation, the government leans heavily on the fact that this statute

contains its own specific and codified definition for the word "venture":

> The term 'venture' means any group of two or more individuals associated in fact, whether or not a legal entity.

18 U.S.C. § 1591(e)(5). Before we proceed to the government's argument, we note two aspects

of it. First, this statutory definition fits perfectly within the three-element interpretation and does

not, on its own, necessitate the four-element interpretation. And second, as a general rule, when

interpreting a statute, we "consider not only the bare meaning of the critical word or phrase but

---

[10] The district court also suspected that the prosecution's broad view of a venture was actually a surreptitious attempt to improperly introduce "other acts" evidence that Federal Rule of Evidence 404(b) would otherwise prohibit. While we have no basis to disagree with that suspicion, and actually find it quite likely, it is ultimately irrelevant to our analysis here, which is limited to our legal interpretation of § 1591(a)(2) as Congress wrote it.

17

also its placement and purpose in the statutory scheme." *Holloway v. United States*, 526 U.S. 1, 6 (1999) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)). Therefore, while § 1591(e)(5) defines "venture" as "any group of two or more individuals associated in fact," we also consider "venture" in the context of § 1591(a)(2), which specifies "a venture which has engaged in an act described in violation of paragraph (1)," i.e., sex trafficking. That is, its "placement and purpose" in § 1591(a)(2) modify its "bare meaning" in § 1591(e)(5).

Perhaps most important, however, is that the final element, which is identical in both the government's and the district court's versions, requires the defendant's personal knowledge (or reckless disregard) that this venture (or someone within the venture) caused a child to engage in a commercial sex act or used force, fraud, or coercion to cause an adult to engage in a commercial sex act. The defendant's mere membership in the venture is insufficient if he is ignorant of the venture's sex trafficking activities (and the means and methods thereof). That is, the government does not argue guilt by association, nor could it. *See United States v. Peyton*, 183 F. App'x 539, 545 (6th Cir. 2006) ("Parties may not use a bare assertion of gang association to imply criminal activity."); *see also United States v. Lopez-Medina*, 461 F.3d 724, 741-42 (6th Cir. 2006) ("Evidence that demonstrates only 'guilt by association' . . . is irrelevant to the question of a defendant's actual guilt."); *United States v. Shalash*, 259 F. App'x 754, 758 (6th Cir. 2008) ("It is axiomatic that guilt by association is an insufficient basis on which to obtain or sustain a conviction."). Given this agreement, we can therefore place this last element first and re-state the two competing versions together for comparison:

The district court's three-element version:

The defendant (1) must know or recklessly disregard that members of a venture either sex traffic an adult by means of force, threats, or coercion, or sex traffic a child; and (2) must knowingly benefit (3) from participation in that sex-trafficking venture.

The government's four-element version:

The defendant (1) must know or recklessly disregard that members of a venture either sex traffic an adult by means force, threats, or coercion, or sex traffic a child; and (2) must knowingly benefit (3) from participation in that venture, regardless of its stated or other purpose; and (4) someone in that venture must engage in sex trafficking.

In this construction, that fourth element appears redundant. The government insists, however, that because the word "venture" means any "association" of people for any purpose, membership in the venture must be its own element, with separate questions (elements) being whether the defendant benefitted from membership in that venture and whether someone in that venture engaged in sex trafficking. Appellant's Br. at 31-32.

The government offers the following example in its brief:

For example, a defendant who is a gang member or associate could agree to participate in the venture (the gang or an agreement to commit criminal acts together) that engages in an act described in § 1591(a)(1). That defendant could have an agreement to receive, or in fact be the recipient of sex (a thing of value) from a victim of the crime for free. In such a case the proof would be sufficient for a jury to find the defendant guilty of [a sex trafficking venture].

Appellant's Br. at 34. But this is an inapt example, for at least two reasons. First, it fits fully within the district court's three-element version; i.e., the defendant (1) knows that someone in the venture is sex trafficking and actually participates in sex with the victim, thereby (2) benefitting (3) from his participation. There is no need, in this example, for a fourth element. And, reference to gang membership is unnecessary and possibly problematic. *See United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996) ("Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a concern whenever gang evidence is admitted.").

Instead, consider a hypothetical defendant who joins a soccer team with some sex traffickers, who sponsor the team financially (i.e., pay for travel accommodations, uniforms and equipment, training, etc.) using the money they generate from sex trafficking activities. And assume that the sex traffickers do not conceal the source of this money from the rest of the team, such that our defendant knows (or recklessly disregards clear knowledge) that his teammate-sex-trafficker-sponsors are engaged in sex trafficking. Under this scenario, the prosecution can meet the first two elements under either construction: (1) the defendant knows of the sex trafficking and (2) benefits from it (i.e., free travel, equipment, training, etc.). Under the government's four-element construction, the prosecution would then prove (3) that the defendant participates in "a" venture with the sex traffickers (i.e., the soccer team), and (4) some members of the soccer team engage in sex trafficking, though everyone agrees that our particular defendant does not, nor does he engage in any activities that further any aspect of the sex trafficking in any way.

Ignoring the reprehensible amorality of our hypothetical defendant, who knowingly participates on a soccer team funded by sex trafficking money, the question is whether Congress criminalized his conduct in § 1591(a)(2). The district court thought not and, under its three-element construction, would require that a defendant actually participate and commit some "overt act" that furthers the sex trafficking aspect of the venture. The district court warned that the statute did not criminalize a defendant's "mere negative acquiescence," and to do so would create "a vehicle to ensnare conduct that the statute never contemplated." *See also United States v. Cain*, 583 F.3d 408, 414 (6th Cir. 2009) ("The general rule is that criminal statutes are to be strictly construed against the Government.").

We agree with the district court and find that § 1591(a)(2) targets those who participate in sex trafficking; it does not target soccer players who turn a blind eye to the source of their financial sponsorship. As a result, in this example, we would require the prosecution to prove

20

that the defendant actually participated in a *sex-trafficking venture*. We would find it irrelevant that he played on a soccer team with sex traffickers (or frequented a restaurant with them or carpooled with them) and would exclude that evidence as irrelevant. If, however, the prosecution proved that our defendant engaged in some aspect of the sex trafficking along with his teammates, the prosecution would have proved a *sex-trafficking venture*, even though their original or primary association was for playing soccer. Two or more people who engage in sex trafficking together are a sex-trafficking venture. Similarly, the prosecution in the present case may introduce evidence that the defendants associated for the purpose of furthering the sex trafficking. But evidence that they were in a car together during unrelated traffic stops, or dined together, or drove one another's cars is irrelevant and properly excluded.

## C.

The third question is whether the district court erred in its holding that teachers and police officers are experts when testifying about their opinion of a person's age. We ultimately affirm the district court's holding, and provide some clarification.

Recall that the prosecution's theme of the first trial was the sex trafficking of *children*. Specifically, the indictment charged several defendants with sex trafficking Jane Doe 2, a minor under the age of 14, in violation of 18 U.S.C. § 1591(a). Moreover, Jane Doe 2 was the prosecution's star witness and, for the most part, its only evidence to support this claim. But the defense argued that Jane Doe 2 and her family had lied about her age and her true parentage, and that she was not only older than she claimed but was actually an adult (at least 18 years old) at the time of the alleged events. When the FBI declared her proffered birth certificate a forgery and DNA testing revealed her biological father, the defense was able to establish conclusively that she was at least five months older than she claimed, and cited other evidence as proof that she was actually much older.

21

This distinction is important: § 1591(a) requires no proof of force, fraud, or coercion in the sex trafficking of a *child*, because a child cannot consent, whereas force, fraud, or coercion is a necessary element for the sex trafficking of an *adult*. But the prosecution had little, if any, evidence of force, fraud, or coercion of Jane Doe 2, and much of the evidence actually depicted Jane Doe 2 as a willing participant. Consequently, the prosecution faced the critical and significant challenge of convincing the jury that Jane Doe 2 was a child.

The prosecution sought to call some of Jane Doe 2's former teachers and certain police officers (who had prior encounters with her) to testify about their opinion of her age. But in an incident typical of the prosecution's approach throughout the trial, the prosecutor made a suspicious "mistake" when calling the first such witness, which set the tone for the ensuing discussion and analysis of this issue. Just prior to a recess, the prosecutor told the court that its next witness would be a records custodian from Jane Doe 2's school, merely to authenticate some records. After the recess, the prosecution called Shelley Wotzka and began with background questions about her 37 years as an elementary and middle school teacher, the thousands of students she had taught ("five to seven hundred a year"), and her position as a teacher at Jane Doe 2's school in 2006. R. 2630 at 1549-50; Pg# 15721-22. Then, this unexpected exchange:

Prosecutor: What grade are you in when you are 12?
Wotska: Sixth, usually.
Prosecutor: Are there significant differences between 12 year olds and 18 year olds?
Wotska: Very much so.
Prosecutor: What are those differences?

. . .

Defense: Your Honor, I object. 701.

22

The Court:   Ladies and gentlemen of the jury, I'm going to have to excuse you for a minute . . . .

I understood this witness was called as a records custodian.

Prosecutor:   No, I'm sorry, Your Honor. If I could explain. I didn't realize that all of the school pictures had already been admitted through JD 2's testimony, and as a result there was no need to call the records custodian. If I may, this woman is a choir teacher for JD 2 in 2006.

. . .

Part of our proof is Jane Doe 2's age. My purpose of calling this witness is [for testimony] that [Jane Doe 2] was appropriately placed in her grade. This witness has over 30 some years worth of experience . . . in dealing with middle schoolers. She can testify competently about . . . if someone were 18 in her sixth grade class, if they were appropriately placed there, if she had any suspicions that they were not, and what steps she took to have someone who was inappropriately placed in her class placed elsewhere.

R. 2630 at 1550; Pg# 15722. In response, the defense argued that this was surprise expert opinion testimony, based on specialized knowledge, drawn from a purported lay witness.

The Court:   . . . What is the basis for this lady's opinion?

. . .

Prosecutor:   Your Honor, after 33 years of teaching, I think she would be in a position to know if she has a[n] 18 year old in her class or if she has someone who is inappropriately placed there, based on their age.

The Court:   Yes, but that's the point I'm getting at. If that is the basis for what you are asking, then this is expert opinion testimony governed by [Federal] Rule [of Criminal Procedure] 16[,] for which there would need to be a report. I granted a Rule 16(a) motion filed by the defendants. And the response to that motion by the [prosecution] was, the [prosecution] has fully complied with all of these. And I don't remember seeing any reports of this witness.

Prosecutor:   Your Honor, and that's correct. We did not list her as an expert witness.

R. 2630 at 1553-56; Pg# 15725-28. After lengthy (and repetitive) further dispute, the prosecution eventually moved on to its next witness but later moved the court to reconsider.

Prosecutor:   . . . Your Honor, on Saturday I filed a brief, and the arguments are basically these. For any of the victim witnesses, their being a minor is an element of proof. We are dealing with a unique population in

that it is very difficult to find actual documentary proof with respect to age. And that's largely a function of the historical circumstances.

Nevertheless, we did find some case law in which courts have allowed laypersons under 701 to provide testimony - -

The Court: That's not the way this witness was presented. This witness was presented as someone who had been teaching for - - what, 30 years?

Prosecutor: That's correct, Your Honor.

The Court: And observed 3,000 - - thousands of students? I mean, the way this witness was presented was as a person with specialized knowledge. It wasn't presented as a lay witness.

. . .

Now, it's going to be hard to tell the jury to strike all this experience she had that she testified to them about 30 years of experience and all these - - I mean, to allow that person to be recalled. That's a back door to . . . [introduce] expert opinion, and I have excluded it.

. . .

Prosecutor: . . . [T]here are other teachers that were on our witness list that we struck, and we would like an opportunity to call them. If the [c]ourt's concern[] is that the [prosecution] is posturing them as experts, we can eliminate those kinds of questions. . . .

The Court: That's what I'm asking you. Assume you call other teachers, what would they add to the jurors' own - - because you introduced pictures in her fifth grade, her sixth grade, her seventh grade, her eighth grade - - what would those teachers add to what the jurors can perceive from the photographs themselves?

. . .

Other than some specialized knowledge based on their experience with children. Because that's really the basis on which you are calling them.

R. 2631 at 1603-06; Pg# 15776-79. The prosecution continued to repeat its same argument until the court recessed, reviewed the prosecution's proffered cases, and returned with a ruling:

The Court: The [c]ourt believes that to call a witness to the stand, and once they identify their avocation and the manner in which they came to know [] Jane Doe 2, once you have asked them their occupation, that's going to carry with it the whole set of implied qualifications and experiences on age that, from the [c]ourt's perspective, necessarily implicates Rule 702, which is a separate requirement before you can present expert testimony. And the [c]ourt believes that just their status as teachers puts them in that category.

24

> So I'm going to deny the [prosecution]'s motion to reconsider, . . .
> for the reasons stated now and for the earlier one.

R. 2631 at 1619-20; Pg# 15792-93. Upon the prosecution's questioning, the court clarified that friends and cohorts would be appropriate lay witnesses concerning their perception of Jane Doe 2's age, but that police officers would not be, for the same reasons as teachers. The prosecution preserved two police officers' proffers for the record, and the district court concluded its ruling:

> The Court:  I think the officers could testify that this Jane Doe 2 appeared young, but in terms of characterizing her age based on their experience, I think they would have to be in compliance with Rule 702. If they were relying on the officer's experience in dealing with young folks in terms of characterizing age, that that would fall under Rule 702, because it is an experience that doesn't grow out of everyday life but it grows out of a specialized occupation.

R. 2631 at 1748-49; Pg# 15921-22.

In ruling on the government's motion in limine, the district court expressly relied on the foregoing reasoning, which it had applied during trial, to reach the same conclusion:

> Prior to trial, several defendants earlier moved for disclosures of experts' reports, but the [prosecution] represented that no such reports were to be used and the [c]ourt denied the defense motions. At trial, the [c]ourt permitted several lay witnesses to give their opinions about Jane Doe Two's age. The [prosecution] then sought to el[ici]t from a teacher, opinion testimony on Jane Doe Two's age, citing the teacher's years of service and the number of students whom the teacher observed over her more than 30 years of service.
>
> . . .
>
> The manner in which the [prosecution] sought to elicit testimony from teachers and intended to elicit from police officers led the [c]ourt to conclude that these witnesses' testimony was or would be based upon their specialized knowledge from numerous years in their line of work. Opinion testimony based upon specialized knowledge is subject to *Daubert* standards. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147-49 (1999). If the testimony is presented on the same bases as at the first trial, the [c]ourt will follow the same ruling.

R. 3167 at 29-31; Pg# 22169-71.

The government argues that the district court misinterpreted and misapplied Rules 701 and 702, and that when teachers and police officers draw from their on-the-job knowledge and experience to form an opinion of a person's age, it is merely lay testimony. Appellant's Br. at 19. Because this concerns the meaning of Rules 701 and 702, we review de novo. *United States v. Breitkreutz*, 977 F.2d 214, 221 (6th Cir. 1992). We review the district court's 701 and 702 rulings for abuse of discretion. *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007).

Comparing the government's argument with the district court's holding, however, reveals a complicating inconsistency: the government argues against a broad proposition, whereas the district court issued a nuanced holding that clearly qualifies that proposition. Both could be correct. Either way, given the standard of review, we must ultimately consider for ourselves the meaning and application of these two rules. Thus, we begin with the plain text of each:

Rule 701. Opinion Testimony by Lay Witnesses

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Rule 702. Testimony by Expert Witnesses

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The critical provision is 701(c), which bars testimony based on "specialized knowledge," and one question is whether teachers and police officers drawing on their vocational experience to estimate a person's age are necessarily relying on "specialized knowledge."

Before parsing the arguments, we can address the parties' cited authority. The government relies on three out-of-circuit opinions to support its position. But each is based on facts very different from the present facts and is, therefore, unpersuasive.

In *United States v. White Calf*, 634 F.3d 453, 460 (8th Cir. 2011), the Eighth Circuit found no abuse of discretion in the district court's admission of testimony by a police officer that, at the time of the arrest, the victim appeared to be underage (i.e., "looked pretty small," "didn't look like she was 19," and "looked like a grade schooler"). The defendant challenged this testimony as irrelevant and prejudicial; he did not challenge it as improper expert testimony and the opinion does not consider expert versus lay opinion at all. Also, far from being dubbed expert testimony, the opinion lumped the officer's testimony in with "[t]he perceptions of [the victim]'s appearance by anyone who saw her on the night in question."

Similarly, in *United States v. Yazzie*, 976 F.2d 1252, 1254-55 (9th Cir. 1992), the challenge did not regard improper expert testimony nor did the opinion consider expert versus lay opinion, because the witnesses were just people who happened to see the 15-year-old victim on the night in question (smoking cigarettes, drinking alcohol, driving a car, wearing makeup, and looking "fully developed"). The appellees here argue that two additional factors further undermine *Yazzie*: (1) it pre-dates the amendment to Federal Rule of Evidence 701 that added the "specialized knowledge" language, and (2) it ultimately holds that, by excluding defendant Yazzie's witness's testimony, the district court prevented defendant Yazzie from rebutting the prosecution's case, leading to Sixth Amendment fair-trial concerns and a defense argument that the prosecution had opened the door to the admissibility of this testimony.

Finally, the government cites *United States v. Stanley*, 896 F.2d 450, 451-52 (10th Cir. 1990), a case in which the Tenth Circuit held that the district court did not abuse its discretion by permitting the government's witness, a postal inspector, to testify that, in his opinion, the girls depicted in certain pornographic photos were under the age of 18. This case has the same limitations as the prior cases: the challenge did not regard a claim of improper expert testimony and the opinion does not consider expert versus lay opinion at all; this case pre-dates the amendment to Rule 701 that added the "specialized knowledge" language; and the-abuse-of-discretion ruling could have been equally upheld had the decision gone the other way.

While we find none of the government's cases compelling, we note that the defendants offer no compelling cases of their own. But the defendants cite the Advisory Committee Notes to the 2000 Amendment to Rule 701, which added the prohibition on basing lay testimony on specialized knowledge within the scope of Rule 702. Those Notes begin:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on . . . other specialized knowledge within the scope of Rule 702. By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson.

Fed. R. Evid. 701, Advisory Committee Notes, 2000 Amendments (internal citation omitted), *citing* Gregory P. Joseph, Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure, 164 F.R.D. 97, 108 (1996) (noting "there is no good reason to allow what is essentially surprise expert testimony" and "the [c]ourt should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process").

Not only did the court clearly believe the prosecution was "proffering an expert in lay witness clothing" (thereby evading the expert-witness disclosure requirements and proffering

"surprise" testimony), the court was also concerned with the basis for or reliability of the witnesses' determination. In its colloquy with the prosecutor, the court returned repeatedly to the fact (conceded by the prosecutor) that these teacher witnesses were basing their opinion of Jane Doe 2's age on their years of experience with thousands of students and the police-officer witnesses on years of extensive interaction with the public, well beyond the experience of an ordinary layperson (or juror). The court also emphasized the defense's inability to challenge such a witness's opinion on cross-examination without acknowledging, or at least revealing, the witness's unique vocational experience. The court thought this was "specialized knowledge" under Rules 701(c) and 702(a).

Now, returning to the government's argument and the district court's holding, we find that we must first reframe the issue. Rules 701 and 702 do "not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." Fed. R. Evid. 701, Advisory Committee Notes, 2000 Amendments (emphasis in original); *see*, *e.g.*, *United States v. Breland*, 366 F. App'x 548, 552 (5th Cir. 2010). To the extent that the district court held that teachers and police officers are necessarily experts because of their vocational knowledge and experience, regardless of their actual testimony, the court is incorrect. Similarly, to the extent that the government argues that because an opinion of a person's age is based on a perception "common to all persons," teachers and police officers are necessarily lay witnesses regardless of their actual testimony, the government is also incorrect. Therefore, while the government is correct in its contention that teachers and police officers are not necessarily experts in forming an opinion of a person's age, it is incorrect in its contention that they necessarily are *not* experts.

Rather, we must consider the proposed testimony and the district court's nuanced holding concerning the actual and anticipated testimony. During trial, the court expressed two basic concerns with the testimony. The first or major concern was that the prosecutor had introduced

the witnesses as if they were experts, by suggesting, asserting, or emphasizing that they had some "specialized knowledge" based on years of experience, thousands of children, etc. The district court was within its authority to address a situation in which it may have viewed the prosecution as improperly bolstering its witnesses. *See*, *e.g.*, *United States v. Garcia-Oriz*, 528 F.3d 74, 79-80 (1st Cir. 2008). The second or minor concern was that the testimony would not add to what the jurors could perceive for themselves, either by seeing Jane Doe 2 as she testified at trial or viewing the many grade-school photos of her that the prosecution had entered into evidence. That is, the court may have viewed the testimony as cumulative, irrelevant, or even misleading. *See* Fed. R. Evid. 701(b) (lay opinion testimony must help the jury "to clearly understanding the witness's testimony or to determining a fact in issue"). Ultimately, the court ruled:

> *The manner in which the [prosecution] sought to elicit testimony* from teachers and intended to elicit from police officers led the [c]ourt to conclude that these witnesses' testimony was or would be based upon their specialized knowledge from numerous years in their line of work. . . . *If the testimony is presented on the same bases* as at the first trial, the [c]ourt will follow the same ruling.

R. 3167 at 29-31; Pg# 22169-71 (emphasis added). Given the express basis and limitation of this ruling, we cannot conclude that the district court misinterpreted or misapplied Rule 701.

Consequently, we find no abuse of discretion in this ruling, which states an intention to exclude certain *testimony* based on its substance or the manner of its presentation. But, as we read this ruling, the court does not intend to improperly exclude certain *witnesses* based solely on their vocation or perceived specialized knowledge. Therefore, we need not correct any such misunderstanding made on that basis.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's judgments that "venture" as used in 18 U.S.C. § 1591(a)(2) means "sex-trafficking venture," and Federal Rule of Evidence

701(c) permits the court to exclude testimony introduced in a manner that implies or expresses some "specialized knowledge" beyond the normal abilities of lay witnesses or jurors. But we REVERSE the district court's judgment that § 1591 applies only to sex trafficking of children.